HEIDER, Appellant, v. CITY OF WAUWATOSA and others, Respondents.

*November 30—December 29, 1967.*

468

470

For the appellant there were briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland,* attorneys, and *Malcolm K. Whyte* and *Richard C. Ninneman* of counsel, all of Milwaukee, and oral argument by *Mr. Ninneman.*

For the respondents there was a brief and oral argument by *Milton F. Burmaster,* city attorney of Wauwatosa, attorney, and *Fraley N. Weidner* of counsel, both of Milwaukee.

BEILFUSS, J. Three issues are presented:

(1) Does the proposed initiative resolution attempt to enact measures which are administrative, therefore not proper subjects of "direct legislation" under sec. 10.43, Stats.?

(2) Would the proposed initiative resolution effect a repeal of existing legislation in a substantial degree?

(3) Must a court issue a writ of mandamus to compel the common council to submit an initiative resolution to the electorate regardless of the validity of the resolution?

The petitions were filed pursuant to sec. 10.43, Stats.,[1] entitled "Direct Legislation." Under this statute a petition may be filed with the city clerk requesting that an ordinance or resolution "either be adopted without alteration by the common council of said city or be referred without alteration to a vote of the electors thereof." The petition must be signed by a number of electors equal to not less than 15 percent of the vote cast in the city for governor at the last general election. If these statutory requirements are met, the city clerk so certifies. The ordinance or resolution must then be passed by the council without alteration, or be submitted to the electors at the next regular election.

The initiative resolution in the instant case complied with the statutory requirements.

In his memorandum opinion, the trial judge stated:

"The Resolution under sec. 10.43, Wis. Stats., as set forth in the stipulated facts, has a two-fold purpose: (1) To prohibit the Common Council from approving any capital expenditures for an addition to Wauwatosa East High School at its present site for a period of three years; (2) To prohibit the Common Council from determining, appropriating or levying any amount to be raised by city taxation for an addition to the Wauwatosa East High School unless and until a Master Plan has been prepared and adopted by the Common Council of the City of Wauwatosa after a public hearing."

Under this interpretation the effect of the resolution is to forestall expenditures for additions to East High School for a period of three years regardless of whether or not a master plan is adopted.

Appellant, without clearly and precisely taking exception to this interpretation, argues that the initiative resolution merely prohibits the expansion of East High School for three years unless a master plan is adopted for the city of Wauwatosa.

---

[1] Sec. 10.43, Stats., has been renumbered sec. 9.20 effective July 1, 1967, with amendments immaterial to the issues herein.

The resolution is somewhat ambiguously worded. It is difficult to determine exactly what the drafter had in mind. Appellant argues, however, that the court must give liberal construction to the resolution and that if there is a possible valid interpretation, that interpretation must be adopted. But under either the trial court's interpretation or the appellant's interpretation the resolution is invalid.

Whether appellant's interpretation or the trial court's interpretation is correct, the resolution is an attempt to interfere with the administrative duties of the city council and the city plan commission.

The trial court stated the following in his memorandum opinion:

"Initiative powers, under sec. 10.43, Wis. Stats., relates solely to those matters which are legislative in character and do not extend to executive or administrative actions of local legislative bodies. Where it is administrative in character, it is outside of the scope of initiative action and in such instances it becomes a matter of judicial disposition to determine whether or not the actions of the electorate under sec. 10.43, Wis. Stats., are proper under the existing circumstances."

While there are no Wisconsin cases directly deciding that an administrative matter cannot be the subject of initiative procedure, we are of the opinion the trial court was correct in concluding that it cannot. The statute itself is entitled "Direct Legislation."

"The power of initiative or referendum usually is restricted to legislative ordinances, resolutions or measures, and is not extended to executive or administrative action." 5 McQuillin, *Mun. Corp.* (3d ed.), pp. 253, 254, sec. 16.55.

The resolution also called for the adoption of a master plan. The trial court determined that this was administrative in character and therefore not properly a subject of initiative proceedings. The trial court stated:

"It seems to this court that the test to be applied, in determining whether the initiative under sec. 10.43, Wis. Stats., is legislative or administrative, is whether the action taken was one making law or merely administering a law already in existence. This court is satisfied that the Resolution in question does not constitute a legislative act. It does not provide for the enactment of a valid ordinance but seeks to defer the administrative action of the Common Council in carrying out the strong mandate of the electorate of the City of Wauwatosa in the referendum on the Bond issue."

McQuillin, *supra,* pp. 254–256, in his treatise on municipal corporation points out the distinction between administrative and legislative matters:

"In reference to what constitutes legislative and what administrative action in connection with restriction of the power of initiative or referendum to legislative matters it has been said that action relating to subjects of permanent and general character are usually regarded as legislative, and those providing for subjects of temporary and special character are regarded as administrative. . . . An ordinance which shows an intent to form a permanent rule of government until repealed is one of permanent operation within requirement that measure must be of permanent operation in order to be submitted to electors under initiative and referendum statute. Obviously, details which are essentially of a fluctuating sort, due to economic or other conditions, cannot be set up in and by an ordinance to be submitted to vote of the people under initiative and referendum statute, which restricts submission to people to measures of permanent operation.

"The test of what is a legislative and what is an administrative proposition, with respect to the initiative or referendum, has further been said to be whether the proposition is one to make new law or to execute law already in existence. Again, it has been said: 'The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.' "

The proposed resolution in either aspect is clearly a prescription of a procedure to be followed in execution

of the ordinance passed. It does not prescribe a "new policy or plan" but "merely pursues a plan already adopted" by the electors of the city through a referendum.

Furthermore, the resolution seeks to control the actions of the city plan commission regarding the adoption of a master plan. City planning is an administrative function of the city planning commission conferred by statute:

"62.23 (2) FUNCTIONS. It shall be the function and duty of the commission to make and adopt a master plan for the physical development of the municipality, . . . The master plan, with the accompanying maps, plats, charts and descriptive and explanatory matter, shall show the commission's recommendations for such physical development, and may include, among other things without limitation because of enumeration, . . . sites for public buildings and structures, . . . the acceptance, widening, narrowing, extension, relocation, removal, vacation, abandonment or change of use of any of the foregoing public ways, grounds, places, spaces, buildings, . . . The commission may from time to time amend, extend or add to the master plan or carry any part or subject matter into greater detail. . . .

"(3) THE MASTER PLAN (a) . . .

"(b) The commission may adopt the master plan as a whole by a single resolution, or, as the work of making the whole master plan progresses may from time to time by resolution adopt a part or parts thereof, any such part to correspond generally with one or more of the functional subdivisions of the subject matter of the plan. The adoption of the plan or any part, amendment, or addition, shall be by resolution carried by the affirmative votes of not less than a majority of all the members of the city plan commission. . . . The purpose and effect of the adoption and certifying of the master plan or part thereof shall be solely to aid the city plan commission and the council in the performance of their duties."

This statute forecloses any argument that the adoption of a master plan is a legislative matter. It is the function of the city plan commission—an administrative body. As stated in the last sentence of the above-quoted statute,

the purpose and effect of the adoption of the master plan "shall be solely to aid the city plan commission and the council in the performance of their duties."

Sec. 62.23, Stats., also reveals another reason the initiative resolution is invalid.

The proposed resolution seeks to undermine the authority granted the city plan commission by statute. The resolution directs the commission as to what to include in the master plan; directs that the master plan shall cover a ten-year period, and directs that a nonresident expert be employed. In addition, the resolution demands a public hearing be held on the adoption of the plan. Sec. 62.23, Stats., leaves the construction and adoption of the master plan entirely within the hands of the city plan commission. This represents a policy decision by the legislature that city planning should not be entirely controlled by city political considerations but rather guided by objectivity.

This court has held that where a statute has conferred a procedure upon a body, electors may not demand the submission of a question which would modify the statutory authority. *Flottum v. Cumberland* (1940), 234 Wis. 654, 667, 291 N. W. 777; *Denning v. Green Bay* (1955), 271 Wis. 230, 72 N. W. 2d 730. In *Denning v. Green Bay, supra,* it was said, at pages 234, 235:

"In *Flottum v. Cumberland,* . . dealing with a change in the source of supply of electric power to a city-owned public utility, we said:

" 'The city having in this case owned and operated its own generating and distribution plant for many years, and being at the time of the issuance of the bonds the owner of its distribution system, we can see no reason why funds may not be raised for improving and adding to the existing system without submitting the matter to a referendum.'

"In the same case we also held that where the statute has prescribed the procedure, the electors may not demand the submission of a question which would modify the statutory authority. In the present action, the statute,

sec. **66.066,** confers authority for the *governing body* to provide, etc. The governing body of Green Bay acted under that authority. The later submission of the question to referendum and the result of the referendum are alike immaterial to control or modify the action. Accordingly, we conclude that, whether or not either referendum was initiated and conducted in a manner technically correct, its result merely advised the common council but did not control it."

The trial court also held that if the resolution were adopted, it would repeal the prior action of the common council and would nullify the school bond resolution adopted at the referendum.

This court determined in our decision in *Landt v. Wisconsin Dells* (1966), 30 Wis. 2d 470, 476, 141 N. W. 2d 245, that initiative proceedings under sec. 10.43, Stats., cannot be used to repeal existing legislation:

"The legislative history makes it clear that the legislature intended to eliminate the referendum provided by sec. 39 j, and leaves no room for the contention that the legislature intended to authorize repeal of existing ordinances or resolutions by resort to the initiative under sec. 10.43, Stats."

It was further said in the same opinion, at page 480:

"As previously indicated, we conclude that the legislature has not, by sec. 10.43, authorized a procedure for the repeal of existing legislation."

The word "repeal" is defined as:

"The abrogation or annulling of a previously existing law by the enactment of a subsequent statute which declares that the former law shall be revoked and abrogated, (which is called 'express' repeal), or which contains provisions so contrary to or irreconcilable with those of the earlier law that only one of the two statutes can stand in force, (called 'implied' repeal)." Black's Law Dictionary (4th ed. 1951).

It might be said that the proposed resolution modifies or amends the resolution adopted by the referendum vote,

but it does not abrogate or revoke the referendum resolution. Neither are the two resolutions so irreconcilable that they cannot stand together. Particularly this is so under appellant's interpretation of the proposed resolution. Under appellant's interpretation the resolution does not prevent the council from issuing general obligation bonds. It merely provides for planning in the expenditure of the funds received from the issuance of the bonds.

While this court held in *Landt, supra,* that an absolute repeal cannot be effected by resort to sec. 10.43, Stats., it expressly reserved the question as to whether a partial repeal or amendment might be accomplished by initiative procedure:

"We consider the proposal involved in the case before us as clearly and solely an attempt to repeal a resolution previously adopted by the council. We note, but do not reach, the possibility that although an ordinance or resolution, proposed by petition, might incidentally involve amendment or repeal of existing measures, its real substance might nevertheless be deemed affirmative legislation upon a new subject." (p. 478.)

This statement, however, indicates that while an initiative resolution may "incidentally" amend an existing measure, it may not directly do so. The proposed resolution in the instant case is an attempt to directly amend the bond resolution adopted. The resolution adopted by the electorate specifically authorizes the city to issue bonds "in an amount not to exceed $7,500,000 for the purpose of acquiring school sites, erecting new school buildings, improving school sites and school buildings. . . ." including East High School. This is blanket authority to expend the proceeds of the bonds for the stated purposes without limitation. The proposed resolution seeks to amend this grant of authority by imposing conditions insofar as East High is concerned. It is our conclusion that the proposed resolution is an attempt to directly amend the previous resolution, and is not "affirmative legislation upon a new subject."

The obligation of the council, after the referendum, was to proceed without unreasonable delay to take steps necessary to issue the bonds and facilitate the school expansion program, including East High School. While we have held above that the proposed resolution is invalid because it calls for administrative control, it is also our opinion that it is an attempt to directly amend existing legislation already approved by an overwhelming majority of the voters. The proposed amendment, even though it would affect only the East High School development and approximately one eighth of the total fund, is a substantial variance from the approved resolution for school construction and physical improvement. We extend the rule of *Landt* to hold that existing legislation cannot be substantially amended by direct legislation under sec. 10.43, Stats.

Appellant's remaining contention is that even though the resolution is invalid, the court cannot "interfere" with the legislative process by declaring the resolution invalid and refusing to issue a writ of mandamus compelling the council to submit the resolution to the electorate. It is appellant's position that the resolution must be submitted to the electorate for a vote and cannot be held invalid until passed by the electorate.

It is true beyond argument that no court of this state has jurisdiction to enjoin a legislative process. *Goodland v. Zimmerman* (1943), 243 Wis. 459, 10 N. W. 2d 180; *Rose Manor Realty Co. v. Milwaukee* (1956), 272 Wis. 339, 75 N. W. 2d 274. However, no one is attempting to enjoin the legislative process in this case. Rather, it is appellant who is seeking to have the court "interfere" with the legislative process by compelling the council to act.

The question of whether mandamus will issue to compel public officials to perform duties even though such will ultimately result in a nullity was considered by this court in *State ex rel. Sullivan v. Hauerwas* (1949), 254 Wis.

336, 36 N. W. 2d 427. In this case the Milwaukee County Board of Election Commissioners refused to place the relator's name on the judicial primary election ballot determining that the relator's nomination papers were invalid because the relator would not be twenty-five years old on either the primary or the general election date. There was a serious question as to whether art. VII, sec. 10 of the Wisconsin Constitution required a candidate to be twenty-five years of age on the date of his election, or merely be twenty-five on the date the candidate would take office if elected. The court held that the constitution required the candidate be twenty-five years of age on the date of his election. However, the court held that mandamus was proper to compel the election officials to place the relator's name on the ballot even though he would not be twenty-five years old on the date of his election. The court stated, however:

"The question of eligibility raised by the relator had never been determined by this court. . . ." (p. 341.)
". . . The relator had a legal right to have his name appear upon the ballot. Had . . . [the question of eligibility] been previously decided by this court so as to put it out of the field of debate, relator's legal right would be a completely naked one and the court could then have considered as bearing upon the exercise of its discretion the effect of the order upon the other candidates for the office, the rights of electors, the fact that the presence of relator's name on the ballot would be of no use to him, and that it would promote confusion and lead to inequitable results. Under these circumstances it would be proper for the court to deny the writ under the doctrine of the *Horton Case, supra.* Since, however, the question had not been determined by this court and relator's eligibility was fairly within the field of debate we hold that it was within the discretion of the trial court to vindicate the legal right of relator by issuance of the writ." (pp. 342, 343.)

In the present case, whether an existing ordinance may be amended by initiative procedure has not been directly

decided. But this court has decided that initiative procedures cannot be resorted to to undermine authority granted by statute. *Denning v. Green Bay, supra.* Also, while this court has never directly stated that administrative measures may not be the subject of initiative, the question is not fairly within the field of reasonable debate. Consequently, it was within the trial court's discretion to deny the writ. As stated in *State ex rel. Sullivan v. Hauerwas, supra,* pp. 340, 341:

"Mandamus is a summary, drastic, and extraordinary writ issued in the sound discretion of the court. Although classed as a legal remedy, mandamus is equitable in its nature and its issuance is generally controlled by equitable principles. The rights of the public and of third persons may be considered.

" 'It is a fundamental principle that courts will not employ their coercive process to compel the doing of a useless thing. Particularly is this true with respect to such a summary and expeditious process as mandamus. The writ is invariably withheld where it would be unavailing, nugatory, or useless and its issuance an idle act.' 34 Am. Jur., Mandamus, p. 831, sec. 37.

" 'While as a rule the writ of mandamus should issue to enforce a clear legal right, it is a discretionary writ and may be withheld where its issuance will work confusion or lead to inequitable results.' *State ex rel. Horton v. Brechler,* 185 Wis. 599, 608, 202 N. W. 144."

Since the right of appellant to have the resolution submitted to the electorate is, in this instance, a completely naked right, the trial court was acting properly within its discretion in denying the writ. Issuance of the writ would be a "useless act" and would compel an "idle act" that would have no effect on the existing ordinances.

*By the Court.*—Judgment affirmed.