SAVE OUR FIRE DEPARTMENT
PARAMEDICS COMMITTEE and Charlotte
Schmidt, Petitioners-Respondents,

v.

CITY OF APPLETON, a municipal corporation,
Dorothy C. Johnson, The Common Council of
the City of Appleton, and Jadell K. Ferge,
Respondents-Appellants.†

Court of Appeals

*No. 85–2353. Argued March 10, 1986.—Decided April 1,
1986.*
(Also reported in 389 N.W.2d 43.)

† Petition to review denied.

For the appellants there were briefs and oral argument by *David G. Geenen,* city attorney.

For the respondents there was a brief and oral argument by *James R. Hill* of Appleton.

Brief amicus curiae of the League of Wisconsin Municipalities was filed by *James H. Schneider,* associate legal counsel.

Brief amicus curiae of the Professional Firefighters of Wisconsin was filed by *Lawton & Cates, S.C.,* and *Richard V. Graylow.*

Before Cane, P.J., Dean and LaRocque, JJ.

CANE, P.J. The City of Appleton appeals a judgment ordering it to submit a proposed charter ordinance to a vote of the electorate.[1] The city argues that the trial court improperly interpreted sec. 66.01, Stats.,[2] regarding the exercise of home rule powers,

---

[1] On March 10, 1986, oral arguments were conducted regarding this appeal. At the conclusion of the arguments, we issued an oral decision from the bench to affirm the judgment of the trial court. This decision was necessary so that the proposed charter ordinance could be included on the ballot for the next election in Appleton.

[2] Section 66.01, Stats., provides in relevant part:

(1) Under article XI, section 3, of the constitution, the method of determination of the local affairs and government of cities and villages shall be as prescribed in this section.

(2)(a) A "charter ordinance" is any ordinance which enacts, amends or repeals the whole or any part of the charter of a city or village, or makes the election mentioned in sub. (4). Such charter ordinance shall be so designated, shall require a two-thirds vote of the members-elect of the legislative body of such city or village, and shall be subject to referendum as hereinafter prescribed.

. . . .

(4) Any city or village may elect in the manner prescribed in

and sec. 9.20, Stats.,[3] regarding the method for direct
legislation. Because we conclude that the trial court

this section that the whole or any part of any laws relating to the
local affairs and government of such city or village other than such
enactments of the legislature of statewide concern as shall with
uniformity affect every city or every village shall not apply to such
city or village, and thereupon such laws or parts thereof shall cease
to be in effect in such city or village.

(5) Any city or village by charter ordinance may make the elec-
tion mentioned in sub. (4) of this section, or enact, amend or repeal
the whole or any part of its charter; but such ordinance shall not
take effect until 60 days after its passage and publication. If within
such 60 days a petition signed by a number of electors of the city
or village equal to not less than 7% of the votes cast therein for
governor at the last general election shall be filed in the office of
the clerk of said city or village demanding that such ordinance be
submitted to a vote of the electors it shall not take effect until sub-
mitted to a referendum and approved by a majority of the electors
voting thereon. Said petition and the proceedings for its submission
shall be governed by s. 9.20(2) to (6).

(6) Any charter ordinance may be initiated in the manner pro-
vided in s. 9.20(1) to (6), but alternative adoption thereof by the leg-
islative body shall be subject to referendum as provided in sub. (5)
of this section.

(7) Any charter ordinance may be submitted to a referendum
by the legislative body, in the manner prescribed in s. 9.20(4) to
(6), without initiative petition, and shall become effective when ap-
proved by a majority of the electors voting thereon.

(8) Every charter, charter amendment or charter ordinance
enacted or approved by a vote of the electors shall control and pre-
vail over any prior or subsequent act of the legislative body of the
city or village. . . .

[3] Section 9.20 provides in relevant part:

(1) A number of electors equal to at least 15% of the votes cast
for governor at the last general election in their city may sign and
file a petition with the city clerk requesting that an attached pro-
posed ordinance or resolution, without alteration, either be
adopted by the common council or referred to a vote of the electors.
The individual filing the petition on behalf of the electors shall des-

**properly ordered the proposed charter ordinance be submitted to a vote of the electorate, we affirm.**

ignate in writing an individual to be notified of any insufficiency or improper form under sub. (3).

(2) The preparation and form of the direct legislation petition shall be governed by s. 8.15.

(2m) After the petition has been offered for filing, no name may be erased or removed. No signature may be considered valid or counted unless the date is less than 60 days before the date offered for filing.

(3) Within 15 days after the petition is filed, the city clerk shall determine by careful examination whether the petition is sufficient and whether the proposed ordinance or resolution is in proper form. The clerk shall state his or her findings in a signed and dated certificate attached to the petition. If the petition is found to be insufficient or the proposed ordinance or resolution is not in proper form, the certificate shall give the particulars, stating the insufficiency or improper form. The petition may be amended to correct any insufficiency or the proposed ordinance or resolution may be put in proper form within 10 days following the affixing of the original certificate and notification of the individual designated under sub. (1). When the original or amended petition is found to be sufficient and the original or amended ordinance or resolution is in proper form, the city clerk shall so state on the attached certificate and forward it to the common council immediately.

(4) The common council shall, without alteration, either pass the ordinance or resolution within 30 days following the date of the clerk's final certificate, or submit it to the electors at the next spring or general election, if the election is more than 6 weeks after the date of the council's action on the petition or the expiration of the 30-day period, whichever first occurs. If there are 6 weeks or less before the election, the ordinance or resolution shall be voted on at the next election thereafter. The council by a three-fourths vote of the members-elect may order a special election for the purpose of voting on the ordinance or resolution at any time prior to the next election, but not more than one special election for direct legislation may be ordered in any 6-month period.

(5) The city clerk shall cause notice of the ordinance or resolution that is being submitted to a vote to be given as provided in s. 10.06(3)(f).

The proposed charter amendment was submitted to the common council and is a form of direct legislation and municipal home rule. *See* sec. 66.01, Stats. It would require that the city provide emergency medical services through its fire department.[4] This proposed or-

(6) The ordinance or resolution need not be printed in its entirely on the ballot, but a concise statement of its nature shall be printed together with a question permitting the elector to indicate approval or disapproval of its adoption.

[4] The proposed charter ordinance states as follows:

*CHARTER ORDINANCE*

A CHARTER ORDINANCE TO CREATE AN EMERGENCY RESCUE SERVICE DIVISION WITHIN THE FIRE DEPARTMENT OF THE CITY OF APPLETON

The Electors of the City of Appleton, Wisconsin, pursuant to Section 66.01(6) of the Wisconsin Statutes, do ordain as follows:

*SECTION 1.* There is hereby created within the Fire Department of the City of Appleton the Emergency Rescue Service Division. This Division shall be under the control of the Fire Department and shall operate in accordance with the procedures set forth in this charter ordinance.

*SECTION 2.* The function of the Emergency Rescue Service Division shall be to provide rescue, emergency medical attention, and transportation of injured and ill persons within the City of Appleton, including the provision of Basic Life Support and Advance Life Support care.

*SECTION 3.* The personnel and equipment required to provide the services referred to in this ordinance shall be furnished by the Fire Department and be a part of its budget, and shall consist of no less than one ambulance and one rescue unit, equipped as necessary to provide these services and staffed by members of the Appleton Fire Department with the necessary experience and training.

*SECTION 4.* All requests for emergency medical or rescue services received through the "911" response system or otherwise shall be referred to the Appleton Fire Department Emergency Rescue Service Division, which shall dispatch emergency units to the scene.

371

dinance was a reaction to a common council decision to discontinue the fire department's emergency medical services and, instead, to rely on private organizations for these services. The common council took no action on the proposed charter ordinance and the trial court, by writ of mandamus, ordered it to submit the proposal to a vote of the electorate.

The dispatcher may also dispatch such other fire department units as necessary when conditions warrant.

*SECTION 5.* If the Emergency Rescue Service Division determines that no life threatening situation exists, it may refer the matter to a private ambulance service, and the Division may at any time permit or request a private ambulance service to provide transportation following the rendition of necessary emergency care. Nothing contained herein shall prohibit any person from obtaining similar emergency services from a private firm if he or she so desires.

*SECTION 6.* The Common Council of the City of Appleton shall pass such supplementary legislation as may in its judgment be necessary or appropriate to put the provision of this Charter Ordinance into effect. The Fire Department shall adopt such policies, rules and procedures as necessary to carry out its mission under this Charter Ordinance and supplemental ordinances. Upon this Charter Ordinance becoming effective, the Common Council and the Fire Department shall take all lawful and necessary actions to put the provisions set forth above into immediate operation, and may establish reasonable fees for services provided by the Emergency Rescue Service Division. Nothing herein shall prohibit the City of Appleton from authorizing members of the Police Department to render such aid to ill or injured persons as may be necessary, appropriate, and not inconsistent with this Charter Ordinance.

*SECTION 7.* This is a Charter Ordinance and shall not be effective until approved by a majority of the electors voting thereon at an election ordered by the Common Council of the City of Appleton under the provisions of Wisconsin Statutes, Sections 9.wo and 66.01, and shall be effective upon its publication in the manner provided by law.

Mandamus is an extraordinary writ that may be issued in the sound discretion of the trial court. *Rawhouser v. Cooperative Educational Service Agency No. 4,* 75 Wis. 2d 52, 61, 248 N.W.2d 442, 447 (1977). A trial court abuses its discretion when it does not exercise its discretion or exercises it based on an error of law or findings that are clearly erroneous. *Gould v. Gould,* 116 Wis. 2d 493, 498, 342 N.W.2d 426, 429 (1984). A writ of mandamus is generally controlled by equitable principles and may be issued when no other remedy exists taking into account the rights of the public and other parties. *Rawhouser,* 75 Wis. 2d at 61, 248 N.W.2d at 447. It may be issued only when the petitioner has a specific legal right to the action he seeks to compel. *State ex rel. Althouse v. City of Madison,* 79 Wis. 2d 97, 106, 255 N.W.2d 449, 453 (1977).

Section 66.01 provides the manner for exercising home rule powers set forth in art. XI, § 3, of the Wisconsin Constitution.[5] A municipality[6] may exercise its home rule powers as a method of determining its local affairs. Section 66.01(1), Stats.; *see also State ex rel. Sleeman v. Baxter,* 195 Wis. 437, 447, 219 N.W. 858, 862

---

[5] Article XI, § 3, of the Wisconsin Constitution provides in relevant part:

> (1) Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide · concern as with uniformity shall affect every city or every village. The method of such determination shall be prescribed by the legislature.

[6] The home rule powers are restricted to cities and villages. Section 66.01(1), Stats.

(1928). A charter ordinance is any ordinance that "enacts, amends or repeals the whole or any part of [a municipal] charter" or that deems state laws relating to purely local concerns to be inapplicable. Section 66.01(2)(a), Stats. A charter ordinance may be initiated in the same manner that any direct legislation is initiated as provided in sec. 9.20 (1) to (6). Section 66.01(6), Stats.

A regular or noncharter ordinance initiated under sec. 9.20 must be legislative in character and within the substantive limits binding the governmental body and cannot be used to repeal or amend existing legislation.[7] *Althouse,* 79 Wis. 2d at 108, 255 N.W.2d at 454. The trial court concluded, however, that the statutory and judicial limitations upon direct legislation under sec. 9.20 do not apply to direct legislation under sec. 66.01. The city argues that these limitations apply to both forms of direct legislation and that the proposed charter ordinance is void because it is administrative in nature and repeals existing legislation.

Because interpretation of a statute is a question of law, we pay no deference to the trial court's decision. *Hainz v. Shopko Stores, Inc.,* 121 Wis. 2d 168, 172, 359 N.W.2d 397, 400 (Ct. App. 1984). Consequently, we will interpret secs. 9.20 and 66.01 *ab initio. Id.*

Sections 66.01 and 9.20 provide the machinery and the method for the exercise of home rule powers. *State*

---

[7] It has also been held that direct legislation must be exercised within the same time schedules that bind the legislative body. *See Feavel v. City of Appleton,* 234 Wis. 483, 291 N.W. 830 (1940). In addition, the electors may not use direct legislation to modify statutorily prescribed procedures. *Althouse,* 79 Wis. 2d at 108, 255 N.W.2d at 454.

*ex rel. Coyle v. Richter,* 203 Wis. 595, 599, 234 N.W. 909, 910 (1931). We agree with the trial court's conclusion that the sec. 66.01 reference to sec. 9.20 is to its procedures regarding direct legislation and does not impose the limitations emanating from this statute on the electorate's exercise of home rule powers. We disagree, however, with its conclusion that the people's exercise of power under sec. 66.01 is free from limitations.

We conclude that a charter ordinance must be legislative in character before it can be validly initiated by direct legislation. The powers of initiative and referendum are reserved to the people of Wisconsin. *Althouse,* 79 Wis. 2d at 115, 255 N.W.2d at 457 (quoting *Blotter v. Farrell,* 270 P.2d 481, 484 (Cal. 1954)). "The power of initiative or referendum usually is restricted to legislative ordinances, resolutions or measures, and is not extended to executive or administrative action." *Heider v. City of Wauwatosa,* 37 Wis. 2d 466, 474, 155 N.W.2d 17, 21 (1967) (quoting 5 E. McQuillin, The Law of Municipal Corporations § 16.55 (3d ed.)).

The legislative-administrative distinction is made because the conduct of government would be seriously hampered if initiative and referendum propositions were used to compel or bar administrative acts by elected officials. *See* 5 E. McQuillin, *supra.* The people have retained the power to use the initiative or referendum process to deal only with matters that are legislative in nature. This limitation is not dependent on the type of legislation involved in the initiative or referendum process but, rather, arises out of the nature of the powers reserved to the people. The nature of the power reserved to the people is limited to legislative matters, and the people are exercising the same reserved power

375

regardless whether charter or noncharter legislation is involved. Consequently, this legislative limitation equally applies to a charter or noncharter initiative. *See Glass v. Smith*, 244 S.W.2d 645, 648–49 (Tex. 1952); *Jones v. International Association of Firefighters*, 601 S.W.2d 454, 455–56 (Tex. Ct. App. 1980).[8]

■

The proposed charter ordinance in this case is legislative in character.[9]

> [A]ction[s] relating to subjects of permanent and general character are usually regarded as legislative, and those providing for subjects of temporary and special character are regarded as administrative. . . . An ordinance which shows an intent to form a permanent rule of government until repealed is one of permanent operation. . . . Obviously, details which are essentially of a fluctuating sort, due to economic or other conditions, cannot be set up in and by an ordinance to be submitted to vote of the people. . . .
>
> "The test of what is a legislative [proposition] and what is an administrative proposition, with respect to the initiative or referendum, has further been said to be whether the proposition is one to make new law or to execute law already in existence. . . . 'The power to be exercised is legislative in its nature if it prescribes a new policy or plan;

---

[8] In the briefs and at oral argument, the respondents conceded that the legislative limitation applies equally to noncharter and charter initiatives.

[9] The respondents argues that the city has waived its right to argue that the proposed charter ordinance is administrative in nature because it failed to raise the issue before the trial court. The record indicates that the city maintained its right to argue this issue on appeal by reference to the question in its trial brief.

> whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.' "

*Heider,* 37 Wis. 2d at 474, 155 N.W.2d at 21 (quoting 5 E. McQuillin, *supra).* Here, the proposed charter ordinance establishes a permanent rule regarding emergency medical services. It also does not pursue a preexisting plan established by the legislative body. The common council decided to stop providing emergency medical services through the fire department. Instead, all emergencies would be routed to privately licensed ambulance services. The proposed charter ordinance prescribes a new policy that these services again be provided through the fire department.

The city argues, however, that the proposal encroaches into personnel matters that are generally characterized as administrative. *See State ex rel. Becker v. Common Council,* 101 Wis. 2d 680, 685–90, 305 N.W.2d 178, 181–84 (Ct. App. 1981). In *Becker,* a noncharter resolution proposed under sec. 9.20 called for the resignation of the city's police chief. The court, concluding that the resolution was administrative in nature, reasoned that the resolution did not establish a rule for all future police chiefs, but rather was restricted to a specific individual.

*Becker* is consistent with our decision. Here, the proposed charter ordinance does not attempt to specify named individuals to provide the emergency medical services. In addition, it does not attempt to establish hours, wages, or other employment conditions for those employees hired to provide the services. Consequently, we conclude that the proposed charter ordinance does

not sufficiently encroach into personnel matters as to make it administrative.[10]

The limitation regarding the repeal or amendment of existing legislation does not apply to a charter ordinance initiative. Our review is controlled by the notion that in order to protect the people of this state in the exercise of their reserved legislative power, statutory or charter provisions dealing with the referendum should be afforded liberal construction. *Althouse*, 79 Wis. 2d at 115, 255 N.W.2d at 457 (quoting *Blotter*, 270 P.2d at 484). The legislature clearly intended charter ordinances to control over any prior or subsequent act of the legislative body. Section 66.01(8), Stats., provides:

> Every charter, charter amendment or charter ordinance enacted or approved by a vote of the electors shall control and prevail over any prior or subsequent act of the legislative body of the city or village. . . .

The city concedes that a proposed charter ordinance has been used to repeal existing legislation. *See Thompson v. Village of Whitefish Bay*, 257 Wis. 151, 157, 42 N.W.2d 462, 465 (1950). The city asserts, however, that the legislation repealed in *Thompson* was part of a general village charter law set out in sec. 61.34, Stats (1933). The city therefore reasons that charter ordinances initiated by direct legislation can

---

[10] We also conclude that a charter ordinance initiated by direct legislation is bound by the same substantive limits that bind charter ordinances proposed by the governing body. For example, neither the people nor the governing body may propose a charter ordinance that rejects a state law dealing with a matter of statewide concern. Section 66.01(4), Stats. This limitation is not an issue in this appeal.

378

be used only to repeal or amend existing portions of a charter but cannot repeal or amend existing non-charter city legislation. We disagree.

A municipal charter is the constitution of the municipality, that is, a statement of the municipality's fundamental or organic laws. *See* 2 E. McQuillin, The Law of Municipal Corporations § 9.03 (3d ed. 1979). Under the city's argument, the prior enactment of non-charter legislation would prevent any subsequent and otherwise validly enacted charter ordinance from dealing with the same subject matter. This result is contrary to the concept that constitutional provisions meeting all of the enactment requirements control over any existing or future legislative enactment. *See State v. Neveau,* 237 Wis. 85, 96–97, 294 N.W. 796, 802 (1940).

We conclude, therefore, that the proposed charter ordinance met all of the challenged requirements. As a result, we affirm the trial court's decision to submit the proposal to a vote of the electorate.

*By the Court.*—Judgment affirmed.