Mark Heitman, on behalf of himself and 196 other qualified electors of the City of Mauston who signed a Direct Legislation Petition, Plaintiff-Appellant,†

v.

City of Mauston Common Council, and City of Mauston, Defendants-Respondents.

Court of Appeals

No. 98–3133. Submitted on briefs February 26, 1999.—Decided April 29, 1999.

(Also reported in 595 N.W.2d 450.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Matthew W. O'Neill* and *Jeremy P. Levinson* of *Friebert, Finerty & St. John, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *John R. Orton* of *Curran, Hollenbeck & Orton, S.C.* of Mauston.

Non-party briefs were filed by *Curtis Witynski* of *League of Wisconsin Municipalities* of Madison.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

ROGGENSACK, J. Mark Heitman appeals from a summary judgment dismissing the complaint which requested a writ of mandamus compelling the City of Mauston Common Council, pursuant to § 9.20, STATS., either to adopt or to refer to a vote of the electorate, without alteration, a proposed initiative affecting the real property within Mauston and for an order, pursuant to § 781.02, STATS., restraining Mauston and its Common Council from entering into any contracts, spending or appropriating public monies on behalf of a secured treatment facility for sexually violent person commitments, as defined in ch. 980 of the Wisconsin Statutes. Because we conclude that the proposed initiative is either a zoning ordinance or an amendment to the zoning ordinances of Mauston and that zoning and amendments to zoning may be accomplished only in compliance with the procedures established in § 62.23, STATS., and not by initiative, which does not utilize those safeguards for individual landowners' rights established by the legislature, we affirm the judgment of the circuit court dismissing the action.

## BACKGROUND

This case arose because of the contemplated construction of a secure treatment facility in Mauston, pursuant to ch. 980, STATS. Mark Heitman, and other signatories, who oppose the construction of the treatment facility in Mauston, commenced an initiative pursuant to § 9.20, STATS.,[1] and requested Mauston

---

[1] Section 9.20, STATS., states in relevant part:

**Direct legislation. (1)** A number of electors equal to at least 15% of the votes cast for governor at the last general election in

either to adopt the proposed initiative without alteration or to submit it to the electorate for a vote. The following is the initiative Heitman proposed:

> **Secured Treatment Facility Prohibition.** The City of Mauston shall not approve or permit the location of a Secured Treatment Facility for Sexually Violent Person Commitments as defined in Chapter 980 of the Wisconsin Statutes on lands within the City of Mauston or on lands owned or annexed by the City of Mauston.

When Mauston refused to either adopt the proposed initiative as an ordinance or to submit it to the electorate, Heitman commenced an action for mandamus to require it to do so and for injunctive relief. Mauston answered, denying that Heitman had a right to the relief that he requested. It then moved for summary judgment, dismissing the lawsuit. The circuit court granted Mauston's motion and this appeal followed.

---

their city . . . may sign and file a petition with the city . . . clerk requesting that an attached proposed ordinance or resolution, without alteration, either be adopted by the common council . . . or be referred to a vote of the electors. . . .

. . . .

(4) The common council . . . shall, without alteration, either pass the ordinance or resolution within 30 days following the date of the clerk's final certificate, or submit it to the electors at the next spring or general election, if the election is more than 6 weeks after the date of the council's . . . action on the petition or the expiration of the 30-day period, whichever first occurs. . . .

. . . .

(8) City ordinances or resolutions adopted under this section shall not be subject to the veto power of the mayor and city . . . ordinances or resolutions adopted under this section shall not be repealed or amended within 2 years of adoption except by a vote of the electors. . . .

## DISCUSSION

**Standard of Review.**

This court reviews summary judgment decisions *de novo* applying the same standards employed by the circuit court. *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31, 34 (Ct. App. 1997). We first examine the complaint to determine whether it states a claim, and then we review the answer to determine whether it joins a material issue of fact or law. *Id.* If we determine that the complaint and answer are sufficient, we proceed to examine the moving party's affidavits to determine whether they establish a *prima facie* case for summary judgment. *Id.* at 232–33, 568 N.W.2d at 34. If they do, we look to the opposing party's affidavits to determine whether there are any material facts in dispute which entitle the opposing party to a trial. *Id.* at 233, 568 N.W.2d at 34.

Here, the initiative that Heitman poses as an ordinance constitutes an undisputed set of facts. The application of § 9.20, STATS., to undisputed facts presents a question of law, which we decide independently of the circuit court's decision. *Schaeffer v. Potosi Village Bd.*, 177 Wis. 2d 287, 289, 501 N.W.2d 901, 902 (Ct. App. 1993).

**Direct Voter Actions.**

An initiative is a direct voter action to enact new law within a particular jurisdiction. *Landt v. City of Wisconsin Dells*, 30 Wis. 2d 470, 480, 141 N.W.2d 245, 250 (1966). The right of initiative must be distinguished from another type of direct legislation, the

546

right of referendum. In a referendum, voters review an enactment of a municipality's governing body. *Id.* at 475, 141 N.W.2d at 248. Referenda are generally employed in attempts to defeat municipal legislation, which the municipality had the power to enact. 5 EDWIN McQUILLIN, MUN. CORP. §§ 16.52 and 16.53 (3rd Ed. 1991).

Powers of direct legislation can arise by statute or through a reservation of rights to the people, in state constitutions. Section 9.20, STATS.; ARIZ. CONST. art. IV, pt. 1, § 1(8); CAL. CONST. art. IV, § 1; OHIO CONST. art. II, § 1. Where the reservation of rights is constitutionally based, procedural due process challenges usually do not succeed because the United States Supreme Court has held that voter actions based on rights reserved to the people in state constitutions satisfy the minimum procedural due process requirements of the Fourteenth Amendment of the United States Constitution. *City of Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 679 (1976).[2]

In Wisconsin, the right of initiative is not reserved to the people in the constitution. Rather, by the adoption of the state constitution, the people of Wisconsin delegated all rights of lawmaking to the Wisconsin Legislature. WIS. CONST. art. IV, § 1. Therefore, in Wisconsin, initiative is a creature of statute and its use must comport with the requirements established by the legislature, both for direct action legislation and for the specific area of legislation in which initiative is

---

[2]*Eastlake* involved direct voter action through referendum, not through initiative.

attempted.[3] Section 9.20, STATS.; *see Landt*, 30 Wis. 2d at 478–79, 141 N.W.2d at 249–50.

Section 9.20, STATS., has been examined in many Wisconsin cases. The supreme court has opined that the direct legislative powers of the people established in § 9.20 should not be unduly restricted, as they are often exercised when the electorate believes that their elected representatives are not acting in response to the public's will. *See State ex rel. Althouse v. City of Madison*, 79 Wis. 2d 97, 118–19, 255 N.W.2d 449, 459 (1977). However, the use of § 9.20 has some limitations. First, the ordinance which is sought to be passed must be legislative in character because direct legislation cannot extend executive or administrative actions of local legislative bodies. *Id.* at 107, 255 N.W.2d at 453 (citing *Heider v. Common Council of Wauwatosa*, 37 Wis. 2d 466, 474, 155 N.W.2d 17, 21 (1967)). Second, direct legislation cannot be used to compel a city council to repeal an existing ordinance or resolution or to compel the passage of an ordinance which would be in

---

[3] When one reviews the many cases examining what, if any, procedural due process requirements apply to initiatives, one must do so with an understanding of whether the right of initiative was reserved to the people in a state constitution or whether initiative was based solely on statute. If initiative is a constitutionally based right, it has generally been held that those enacting legislation through initiative are not required to follow the statutorily prescribed procedures required of a municipality. *See Associated Home Builders of Greater Eastbay, Inc. v. City of Livermore*, 557 P.2d 473, 480–81 (Cal. 1976). However, if initiative is solely a creature of statute, it cannot be used to subvert the procedures and substantive goals established by the legislature for the area of law in which initiative is attempted. *See Kaiser Hawaii Kai Dev. Co. v. City and County of Honolulu*, 777 P.2d 244, 246–47 (Haw. 1989). Heitman did not analyze the cases he cited in light of this critical difference.

clear conflict with one already in existence, such that it would act as a repealer of the existing ordinance. *Althouse*, 79 Wis. 2d at 107, 255 N.W.2d at 453–54 (citing *Landt*, 30 Wis. 2d 470, 141 N.W.2d 245). Third, citizens seeking to effect a § 9.20 initiative may exercise only those legislative powers that have been conferred upon a city's common council.[4] *Althouse*, 79 Wis. 2d at 108, 255 N.W.2d at 454. Fourth, if Wisconsin statutes establish procedures and standards for the accomplishment of legislation in a certain area, a § 9.20 initiative may not effect legislation which would modify the statutorily prescribed directives that would bind a municipality if it were trying to legislate in the same area. *Id.* (citing Edwin Conrad, *Direct City Legislation on Foreign Policy Matters*, 51 Marq. L. Rev. 426 (1968); *see also* David L. Callies, et al., *Ballot Box Zoning: Initiative, Referendum and the Law*, 39 Wash. U. J. Urb. & Contemp. L. 53 (1991)).

## Heitman's Initiative.

Mauston claims Heitman's initiative is an attempt to "administer" zoning ordinances. Heitman responds that Mauston is in reality claiming that the initiative is a zoning ordinance, or the repeal of a zoning ordinance. And while Heitman denies the initiative is a zoning ordinance, he does not argue that in Wisconsin one cannot zone by initiative. In order to decide the nature

---

[4] For example, in *State ex. rel. Becker v. Common Council of Milwaukee*, 101 Wis. 2d 680, 305 N.W.2d 178 (Ct. App. 1981), we examined an initiative which sought to remove the Milwaukee Chief of Police. We concluded that a writ of mandamus would not lie to compel the common council to enact an ordinance, or refer an initiative to the voters, to remove the Chief because the Board of Fire and Police Commissioners had the exclusive authority to do so, as established by § 62.50, STATS.

of Heitman's initiative, *i.e.,* whether it is an attempt to zone or rezone, we first review the characteristics of zoning.

Zoning has been described as the division of a given jurisdiction's land into districts or "zones" and the establishment of regulations within those zones to control both the use to which property may be placed and the construction of structures. BLACK'S LAW DICTIONARY 1618 (6th ed. 1990). Zoning is an element of a state's inherent police power insofar as in its exercise, it imposes use restrictions on property without the payment of compensation. *See Berman v. Parker*, 348 U.S. 26, 36 (1954). The power to zone and rezone can be delegated to municipal corporations. 8 EDWIN MCQUILLIN, MUN. CORP. § 25.214 (3rd Ed. 1991). States that allow municipal zoning typically do so through state zoning enabling acts. *See* Nicolas M. Kublicki, *Land Use By, For, and Of the People: Problems with the Application of Initiatives and Referenda to the Zoning Process*, 19 Pepp. L. Rev. 99, 135–36 (1991).

Wisconsin's legislature has created a state zoning enabling act in § 62.23, STATS. This act establishes substantive and procedural rights for landowners by requiring a municipality to create its zoning ordinances under certain defined procedures and within certain limitations. For example, pursuant to § 62.23(1), a city may create a planning commission, which Mauston has done. The planning commission is charged with constructing a master plan for the physical development of land within the municipality, which Mauston has also done. Section 62.23(2). Any proposed change of use from that set out in the master plan must first be referred to the planning commission. Section 62.23(7)(d)2. Municipalities are charged with enacting zoning ordinances which promote the health, safety,

morals and the general welfare of their communities. Section 62.23(7).[5] Likewise, a municipality may change the zoning in regard to certain properties. However, when it does so, it must follow statutorily prescribed procedures, which include notice and hearing. *Gordie Boucher Lincoln-Mercury Madison, Inc. v. City of Madison Plan Comm'n*, 178 Wis. 2d 74, 94, 503 N.W.2d 265, 271–72 (Ct. App. 1993);[6] § 62.23(7)(d).

---

[5] Zoning is described in § 62.23(7), STATS., as follows:

(a) *Grant of power.* For the purpose of promoting health, safety, morals or the general welfare of the community, the council may regulate and restrict by ordinance, . . . the location and use of buildings, structures and land for trade, industry, mining, residence or other purposes . . . .

(b) *Districts.* For any and all of said purposes the council may divide the city into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this section; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration or use of buildings, structures or land. . . . Such regulations may also provide for the development of the land in such districts with one or more principal structures and related accessory uses, and in such districts the regulations need not be uniform.

[6] In *Gordie Boucher Lincoln-Mercury Madison, Inc. v. City of Madison Plan Comm'n*, 178 Wis. 2d 74, 503 N.W.2d 265 (Ct. App. 1993), we examined when an action taken is zoning. There, the City of Madison Common Council had adopted a resolution authorizing an intergovernmental agreement with the City of Sun Prairie to provide visual open space between the two cities' urban areas. Gordie Boucher submitted a certified survey map (CSM) in which it proposed to divide approximately 41.25 acres of land into four lots and to use two of the lots for an automobile dealership. The City of Madison refused to approve the CSM relying on its agreement with the City of Sun Prairie to provide visual open space. We determined the agreement was a restriction on the use to which land could be put, and therefore, it involved the planning and zoning authority of the City of Madison. We overturned the City of Madison's refusal to

Wisconsin's zoning enabling act also establishes a procedure by which a landowner may appeal the enactment or amendment of zoning ordinances. Section 62.23(7)(d).

Heitman contends that the proposed initiative is an appropriate use of § 9.20, STATS., because it is legislative in nature and would not usurp the authority delegated to the planning commission pursuant to § 62.23, STATS. Heitman agrees that implementation of the initiative would prohibit Mauston from approving or permitting the location of a ch. 980 treatment facility on all lands within, owned by, or annexed by Mauston. Heitman ignores the legal effect that a pervasive prohibition on the use of land of others implies. We are not free to ignore its effect, however, as the effect on land use is a crucial factor in determining whether the restrictions Heitman seeks can be accomplished by initiative.

■

We have previously examined ordinances which restrict land use in a comprehensive fashion, and we have concluded that, "[A]n ordinance [which] constitutes a pervasive regulation of, and in many instances a prohibition on the use of, land . . . is a zoning ordinance." *Gordie Boucher*, 178 Wis. 2d at 94, 503 N.W.2d at 272 (citation omitted). Pervasive land use restrictions are controlled by the zoning enabling act in order to assure that such restrictions will not be imposed without the substantive and procedural safeguards established by the legislature. *Id.* Here, Heitman's proposed initiative would pervasively restrict the use that

approve the CSM because we concluded it was using its plat approval authority as a zoning tool which tool could be employed only in conformance with the zoning enabling statute. *Id.* at 94, 503 N.W.2d at 271.

other landowners could make of their land, as a ch. 980 facility would otherwise be permissible in some districts within Mauston. Because Heitman's proposed initiative constitutes a pervasive prohibition[7] on the use of land within a jurisdiction, it is either a zoning ordinance[8] or an amendment to a zoning ordinance.[9] Therefore, we conclude that Heitman seeks to zone or rezone by initiative, rather than through the process provided by the legislature in § 62.23.

We also conclude that Heitman's proposed initiative is an invalid use of the initiative process because the zoning enabling act has established procedures and standards for zoning and Heitman may not modify them by zoning through the initiative process. To explain more fully: if Mauston were to enact the land use restrictions proposed by Heitman under the zoning enabling act, it would be required to first submit them to the planning commission. *Scanlon v. City of Menasha*, 16 Wis. 2d 437, 442, 114 N.W.2d 791, 794 (1962); § 62.23(5) and (7)(d), STATS. All landowners would be given notice and a public hearing would be held. *Gloudeman v. City of St. Francis*, 143 Wis. 2d 780, 784, 422 N.W.2d 864, 866 (Ct. App. 1988); § 62.23(7)(d). Any citizen aggrieved by the enactment of the restrictions would have a right of appeal. Section 62.23(7)(e). By

---

[7] The dissent asserts we have created a new definition for a zoning ordinance. However, as the passage quoted from *Gordie Boucher* shows, this court has employed the same terminology since 1993.

[8] Because Heitman's proposed initiative would affect land not currently owned or zoned by Mauston, in that limited respect, it could be interpreted as a zoning ordinance, rather than as an amendment to zoning.

[9] This type of zoning has been referred to as "exclusionary zoning." BLACK'S LAW DICTIONARY 1619 (6th ed. 1990).

contrast, if Heitman's initiative were adopted, the owners of the land upon which use restrictions were placed would not be provided with a review by the planning commission, with notice, with a public hearing or with an appeals procedure. None of the procedural protections which the legislature has established for landowners would be employed. Therefore, if the Common Council acquiesced to Heitman's request, it would be effecting zoning without complying with the mandates of § 62.23. It cannot do so because any change in zoning enacted without following the procedures mandated by the legislature would be void. *Gloudeman*, 143 Wis. 2d at 784, 422 N.W.2d at 866. As we concluded in *Gordie Boucher,* when land use controls prohibit the use of land for particular purposes, they must be accomplished by the substantive and procedural safeguards created by the legislature in the zoning enabling act. *Gordie Boucher*, 178 Wis. 2d at 94, 503 N.W.2d at 271–72.

We conclude that Heitman is attempting to do by initiative what the Common Council, itself, cannot do; *i.e.*, avoid the substantive and procedural safeguards established in § 62.23, STATS. Because initiatives may be used for only those legislative acts which a municipality, itself, could do, Heitman's proposal is not one that can be accomplished by initiative.[10] Accordingly, we conclude Mauston reached the correct decision in refusing to adopt or to submit the initiative to the electorate, and we affirm the judgment of the circuit court

---

[10] Because a municipality has already enacted an ordinance when a direct action referendum is employed, decisions involving referenda do not analyze whether the municipality had the power to enact the referendum at issue. Many of the cases cited by Heitman were based on referenda. Therefore, they are not directly applicable to the dispositive issue before us.

dismissing Heitman's action for a writ of mandamus and for injunctive relief.

## CONCLUSION

Because we conclude that the proposed initiative is either a zoning ordinance or an amendment to the zoning ordinances of Mauston and that zoning and amendments to zoning may be accomplished only in compliance with the procedures established in § 62.23, STATS., and not by initiative, which does not utilize those safeguards for individual landowners' rights established by the legislature, we affirm the judgment of the circuit court dismissing the action.[11]

*By the Court.*—Judgment affirmed.

DYKMAN, P.J. *(dissenting)*. Today, the majority has expanded considerably Wisconsin's definition of

---

[11] Mauston urged us to conclude the initiative is administrative in nature, while Heitman represented it is legislative. Some jurisdictions, such as those in California, have held that zoning is always legislative in nature, *see Consolidated Rock Products Co. v. City of Los Angeles*, 370 P.2d 342, 346–47 (Cal. 1962), while in other jurisdictions the nature of zoning is determined on a case by case basis and has, on occasion, been held to administrative or adjudicative. *See Witcher v. Canon City*, 716 P.2d 445, 448–50 (Colo. 1986); *see also Fasano v. Washington County Bd. of Comm'rs*, 507 P.2d 23, 26–27 (Or. 1973). Because we have decided this case on alternate grounds, we do not determine whether the nature of the proposed initiative is legislative or administrative. However, we note that if Heitman's proposed initiative directs Mauston to interpret its zoning code in a manner which prohibits issuing a land use permit for the construction of a ch. 980 facility, it is administrative in nature; and therefore, an impermissible use of direct legislation. *See Heider*, 37 Wis. 2d at 474, 155 N.W.2d at 21.

the term "zoning," and has added much to the matters
that a municipality must submit to its plan commis-
sion. As I read the majority opinion, the reason why the
Heitman ordinance failed was because the Mauston
Common Council could not have adopted the ordinance
without first submitting it to the Mauston plan com-
mission. I do not see this as an impediment. The city
council could have submitted the Heitman ordinance to
the plan commission. But that begs the question of
whether the Heitman ordinance required submission
to the plan commission in the first place.

Although zoning ordinances are enacted under a
municipality's police power, all ordinances enacted
under the police power are not zoning ordinances. In
*Gordy Boucher Lincoln-Mercury Madison, Inc. v. City
of Madison Plan Comm'n*, 178 Wis. 2d 74, 503 N.W.2d
265 (Ct. App. 1993), we concluded that a county periph-
eral area development plan constituted zoning. But not
everything a city council does that somehow pertains to
land or somehow regulates the use of land *is* zoning,
and not everything pertaining to land use must be
referred to the city plan commission. In *Rath v. Two
Rivers Community Hosp., Inc.*, 160 Wis. 2d 853, 861,
467 N.W.2d 150, 153 (Ct. App. 1991), the court noted
that by construing § 62.23(5), STATS., broadly, "[t]he
result would be that any action taken by a city council
concerning any real property would have to be referred
to the city plan commission."

Matters that must be submitted to a city plan com-
mission are set out in §§ 62.23(5)[1] and 62.23(7), STATS.

---

[1] Section 62.23(5), STATS., provides:

MATTERS REFERRED TO CITY PLAN COMMISSION. The
council, or other public body or officer of the city having final
authority thereon, shall refer to the city plan commission, for its
consideration and report before final action is taken by the council,

I do not read the majority opinion as concluding that the Heitman ordinance must have been submitted to the plan commission because that was required under § 62.23(5). Rather, I read it as holding that because the Heitman Ordinance was either a zoning ordinance or an amendment to a zoning ordinance, it could not have been adopted by the Mauston Common Council without prior submission to the plan commission, and therefore was ineligible for § 9.20 adoption.

Section 62.23(7), STATS., is a comprehensive statute that outlines the procedures a city must follow to enact a zoning ordinance or an amendment to a zoning ordinance. The majority concludes that the Heitman ordinance was a "pervasive prohibition on the uses of land," and therefore was a zoning ordinance subject to § 62.23(7).[2] I believe that this definition is overly

---

public body or officer, the following matters: The location and architectural design of any public building; the location of any statue or other memorial; the location, acceptance, extension, alteration, vacation, abandonment, change of use, sale, acquisition of land for or lease of land for any street, alley or other public way, park, playground, airport, area for parking vehicles, or other memorial or public grounds; the location, extension, abandonment or authorization for any public utility whether publicly or privately owned; all plats of lands in the city or within the territory over which the city is given platting jurisdiction by ch. 236; the location, character and extent or acquisition, leasing or sale of lands for public or semipublic housing, slum clearance, relief of congestion, or vacation camps for children; and the amendment or repeal of any ordinance adopted pursuant to this section. Unless such report is made within 30 days, or such longer period as may be stipulated by t he common council, the council or other public body or officer, may take final action without it.

[2] The majority uses the term "pervasive prohibition." The term "pervade" is defined to mean "to become diffused throughout every part of." WEBSTER'S THIRD NEW INT'L DICTIONARY 1688 (1993). I am not convinced that the use of the word "pervasive" adds anything to the word it modifies, "prohibition."

broad, and brings within the definition of "zoning" many things that previously were considered common exercises of the police power. Some examples of pervasive prohibitions on the uses of land follow.

If I wish to use my land in the Village of Oregon to plant a box elder tree, the village municipal code prohibits me from doing so. *See* OREGON MUNICIPAL CODE § 10.03(6)(b) (1976). If I own a self-service laundry facility in the City of Madison, my patrons and I are prohibited from using that property to smoke a cigarette or a cigar. *See* MADISON GEN. ORDINANCES vol. III, § 23.05(3)(l) (1998). I am prohibited from using my property in Mt. Horeb to sell liquor and beer, unless I obtain a license. *See* MUNICIPAL CODE OF MT. HOREB § 10.04(2) (1986). I am prohibited from using my tavern in Milwaukee for public dancing, unless I obtain a permit from the City of Milwaukee. *See* MILWAUKEE CODE OF ORDINANCES vol. 1, § 108–2(1) (1996). The City of Monona prohibits the use of anyone's property in the City of Monona as a gambling house or bawdy house. *See* MONONA CODE OF ORDINANCES § 11–6–4(a) (1994). All of these ordinances are prohibitions on the use of land. If "pervasive" has a meaning in this context, all are also pervasive prohibitions. I find it difficult to conclude that all of these prohibitions are zoning ordinances that require the approval of the appropriate plan commissions.

A more common definition of zoning is described in 1 E.C. YOKLEY, ZONING LAW AND PRACTICE § 2–1 (4th ed. 1978), as a " 'general plan to control and direct the use and development of property in a municipality or a large part of it by dividing it into districts according to the present and potential use of the properties.' " *Id.* (quoting *State v. Huntington*, 143 A.2d 446 (Conn.

1958)) (footnote omitted). The author further states that:

> The essence of zoning is territorial division in keeping with the character of lands and structures and their peculiar suitability for particular uses, and the uniformity of use within the division. The genius of the constitutional and statutory zoning process is the regulation of land and buildings by districts according to the extent and nature of their use.

*Id.* (footnotes omitted).

The ordinance proposed by Heitman read:

> *Secured treatment facility prohibition.* The City of Mauston shall not approve or permit the location of a Secured Treatment Facility for Sexually Violent Person Commitments as defined in Chapter 980 of the Wisconsin Statutes on lands in the City of Mauston or on lands owned or annexed by the City of Mauston.

When Heitman filed his petition, there was nothing in the Mauston zoning code concerning facilities under ch. 980, STATS. There was the usual provision for hospitals and clinics, but a ch. 980 facility is, in effect, a prison containing a treatment facility for sexually violent persons. When the Mauston Common Council and plan commission first adopted Mauston's zoning code, it could not have considered a ch. 980 facility as a hospital or clinic, in the same way that people usually interpret these words. I am aware that after the Heitman petition was filed, the Mauston Common Council adopted a change in its zoning ordinance that permitted ch. 980 facilities, but I am not convinced that after-the-fact zoning can defeat a petition under § 9.20, STATS. Were that permitted, city councils that found

§ 9.20 petitions to be an annoyance could simply adopt competing ordinances after a § 9.20 petition was filed, and thus foil the petition. Even the League of Wisconsin Municipalities' amicus brief concedes that there is merit in Heitman's claim that a municipal governing body should not be able to enact a contrary resolution or ordinance that would nullify or defeat a proposed ordinance or resolution properly initiated under § 9.20.

I therefore conclude that at the time Heitman filed his petition, Mauston had no policy as to whether its citizens favored a ch. 980, STATS., facility within the city. The Heitman ordinance was certainly not a territorial division of the City of Mauston. It did not deal with division at all, nor did it add ch. 980 uses to a particular district. It did not create a ch. 980 district. Instead, like other ordinances enacted under a city's police power, such as ordinances prohibiting box elder trees, prohibiting smoking in laundromats, prohibiting public dancing, and prohibiting gambling houses and bawdy houses, the Heitman ordinance prohibited ch. 980 facilities. If Monona can prohibit gambling houses without having the ordinance approved by its plan commission, why cannot Mauston prohibit ch. 980 facilities without the approval of its plan commission?

Were I writing for the majority, I would use the more common definition of "zoning" that I have quoted earlier. Although Mauston advances other reasons that the Heitman ordinance is invalid, I find these reasons without merit. Thus, I would reverse and remand to the circuit court with instructions to direct the City of Mauston to adopt the Heitman ordinance or submit it to Mauston's electorate.