HENDERSON and others, Respondents, vs. HOESLEY, Mayor, and others, Appellants.

*September 15—October 12, 1937.*

L. H. *Rooney* of Shullsburg, attorney, and *Miles C. Riley* of Madison of counsel, for the appellants.

For the respondents there was a brief by *Kopp & Brunckhorst* of Platteville, and oral argument by *Arthur W. Kopp.*

NELSON, J. So many of the facts alleged in the complaint and answer as are necessary to an understanding of this controversy will first be summarized. The complaint alleges in substance that on or about the 21st day of February, 1933, proceedings were instituted by the city of Shullsburg for the acquisition by it of that part of the electric plant and equipment owned by Interstate Light & Power Company, located within the city, for the purpose of operating it as a public utility; that such proceedings were thereafter allowed to lapse

and nothing further was done until in the month of August, 1935, when the same were revived; that a hearing was had before the public service commission as a result of which the commission, by its order dated October 27, 1936, determined the just compensation to be paid by the city for said property; that thereafter the city of Shullsburg, through the defendants, took further and additional steps for the issuance of bonds in the sum of $18,000 for the purpose of paying for said plant and $8,000 for rebuilding it; that the property has not been acquired and the bonds have not been sold or issued; that a large majority of the voters and taxpayers of the city are opposed to the acquisition of said public utility, and are adverse to the city's owning, maintaining, or operating it; that on or about November 3, 1936, pursuant to the provisions of sec. 10.43, Stats., a petition was filed with the city clerk signed by the plaintiffs and others, to the number of more than fifteen per cent of the votes cast in the said city for governor at the last general election, held prior to that date, requesting that the following resolution be adopted without alteration by the common council, or be submitted without alteration to the electors of the city for their approval or disapproval:

"The City of Shullsburg Does Hereby Resolve: That before proceeding further with the acquisition of the electric plant and equipment owned by the Interstate Light & Power Company in the city of Shullsburg, Wisconsin, including the issuance by the city of Shullsburg of revenue bonds to pay for the same, such proposed action by the city of Shullsburg shall be submitted to the electors of said city for their approval or disapproval."

That the said city clerk thereafter carefully examined said petition and determined that it was sufficient, and so certified to the common council; that more than thirty days have elapsed since the said petition was filed with the common

council, and it has failed to adopt the resolution or to take steps to submit it to the electors either at a regular or special election; that the acquisition, operation, and maintenance of said electric property proposed to be purchased would be detrimental to the best interests of the city and its taxpayers, and would constantly cause excessive expenditures of the taxpayers' money. The complaint further alleges the conclusion of law that, under the provisions of sec. 10.43, Stats., it is the duty of the council to adopt the resolution without alteration or refer it without alteration to a vote of the electors. The complaint further alleges that the defendants give out and threaten that they will proceed to issue and sell the bonds referred to and expend the proceeds thereof for the purchase of said plant unless they are restrained from so doing, and that unless the defendants are restrained, pending the holding of a referendum on said resolution, the plaintiffs will be deprived of their right to have a referendum on said resolution as provided by law.

The answer admits that proceedings were instituted by the city in 1933 to acquire the property of the public-utility company; that the public service commission determined the compensation to be paid; that the city, by its duly constituted authority, took steps for the issuance of bonds for the purpose of acquiring said property and rebuilding the same; that no bonds have been issued or sold, and the property has not been fully acquired; but denies that the proceedings ever lapsed, and alleges that the proceedings are still pending. The answer further admits the making and filing of the petition which requested the adoption of the resolution by the council without alteration, or its reference without alteration, to the electors; that the city clerk examined the petition and certified it to be sufficient under sec. 10.43, Stats.; that neither the mayor, city clerk, or city council has taken any steps to refer the resolution to a regular or special election; that it is

the intention of the defendants to acquire the public utility for the city, and to operate it as a municipality-owned public utility, but denies that it was the duty of the common council, either to pass the resolution without alteration, or to refer it without alteration to the electors, at a regular or special election. The answer further alleges that Interstate Light & Power Company now owns and operates a public utility in the city of Shullsburg, for the production, sale, and distribution of electric energy, and that said company is now operating said utility pursuant to and under an indeterminate permit, wherein and whereby it consented to the taking over of its plant by the city of Shullsburg in accordance with law; that at the spring election held in April, 1933, the electors of the city of Shullsburg duly determined by a majority vote to acquire said plant; that thereafter the city gave notice of such determination to the public service commission and to the said company; that thereafter a hearing was duly had and, after a rehearing, the commission determined and certified to the city clerk the amount of the just compensation to be paid said company by the city for said property; that the proceedings to acquire said property continued, and the common council has never adopted and published a resolution discontinuing said proceedings; that said proceedings were had pursuant to ch. 197, Stats.; and that the determination of the electors by a majority vote to acquire said utility is final and conclusive unless the common council, after the commission has certified the just compensation to be paid, adopts and publishes a resolution to discontinue all proceedings.

The sole question to be determined is whether it is the duty of the common council either to pass without alteration or submit to the electors of the city without alteration at a regular or special election, as provided by sec. 10.43, Stats., the resolution submitted to it by the petition of not less than fifteen per cent of the electors of Shullsburg, which resolution

substantially provides that before proceeding further with the acquisition of the electric plant and equipment owned by the utility company and issuing bonds to pay for it, such proposed action by the city shall be submitted to the electors for their approval or disapproval,—a majority of the electors of the city having theretofore voted in favor of acquiring such plant, the commission having duly determined the just compensation to be paid for it, and the common council not having passed a resolution discontinuing all proceedings to acquire it, as provided by ch. 197, Stats. The question, stated differently, is whether ch. 197 provides a complete procedure for the acquisition by a city of a public utility operating under an indeterminate permit and an exclusive procedure for discontinuing proceedings duly initiated and conducted, after the commission has determined the just compensation to be paid.

The question is one of statutory construction, and our duty is to ascertain what the legislature intended when it adopted ch. 197, Stats. No question is raised as to the legality or regularity of the proceedings taken by the city of Shullsburg to acquire the electric plant and equipment, or so much thereof as is used and useful for the convenience of the public, up to the time that the plaintiffs and others filed their petition requesting that the resolution submitted be passed without alteration or be submitted without alteration to the electors, and the council failed to adopt it or refer it to the electors. The resolution, if it had been adopted by the common council without alteration, would in effect have provided that the proposed action by the city to acquire the utility be again submitted to the voters of the city for their approval or disapproval. The resolution, if adopted by the council, and if valid and legal, would authorize a referendum election on the question of going on with the proceedings to acquire the electric plant and equipment. If the common council refused

to pass the resolution without alteration, and if sec. 10.43, Stats., be held applicable, then it was its duty to submit the resolution without alteration to the electors and, if a majority thereof voted in favor of passing the resolution, then it would have been the duty of the common council again to submit to the electors, at a special or general election, the question of going forward with the proceedings to acquire the utility, including the issuance of the proposed bonds, for their approval or disapproval. This is the true tenor and effect of the resolution as drawn. The legislature in our opinion never intended to authorize such proceedings or to burden a proceeding to acquire a public utility by a city or other municipality with any such procedure. While conceding that the resolution is not artistically drawn, and that it does not specifically relate to a discontinuance of the proceeding to acquire the utility, the plaintiffs contend that, considering the resolution in connection with the undisputed facts, and in the light of the surrounding circumstances alleged, it requests the council to submit to the voters the question whether the proceeding should be discontinued. Even assuming that the petition means what the plaintiffs assert it to mean, we are nevertheless of the opinion that the legislature did not intend that a regularly conducted proceeding to acquire a public utility by a city could be discontinued in that manner after the public service commission had determined the just compensation to be paid by the city for it. A careful reconsideration of the provisions of ch. 197, Stats., impels the conclusion that the legislature intended the provisions thereof to constitute the complete procedure for acquiring a public utility by a city. Such is clearly the effect of at least two of our prior decisions. In *Janes v. Racine,* 155 Wis. 1, 14, 143 N. W. 707, it was said:

"Ch. 665 furnishes in itself *a complete procedure for acquiring a public utility* in cases where it is applicable, *and so does the general Public Utility Act.* Neither refers to the

other. Each uses expressions equivalent to 'as herein provided,' and does not seem to contemplate the aid of supplementary statutes in completing the proceeding. The language of sec. 1797*m*—81 to the effect that if the city shall have determined to acquire an existing plant 'in the manner provided in the preceding section,' clearly indicates that no other procedure than that contained in the section referred to was in the legislative mind."

The holding in that case was specifically followed in the recent case of *Wisconsin P. & L. Co. v. Public Service Comm.* 222 Wis. 25, 32, 267 N. W. 386. We therefore conclude that ch. 197, Stats., was intended to provide the complete procedure for the acquisition by a city of an existing public utility operating under an indeterminate permit. In neither of the cases mentioned, however, was there any occasion for deciding whether the electors may legally initiate a discontinuance resolution upon the failure or refusal of the council to pass such a resolution after the commission has determined the just compensation to be paid.

Sec. 197.04, Stats., in part, and so far as here material, provides:

*"Discontinuance of condemnation.* (1) Any municipality having determined to acquire an existing plant or any part of the equipment of a public utility may discontinue all proceedings to that end at any time within ninety days after the final determination of compensation by the commission, *by a resolution to that effect by its municipal council,* provided that such resolution shall not be of force and effect until ninety days after its passage and publication. If within said ninety days a petition shall be filed with the clerk of such municipality in a city of the first class signed by five per cent and in all other municipalities by ten per cent of the electors thereof requesting that the question of discontinuing said proceeding to acquire such plant or equipment be submitted to the electors, such question shall be submitted to the said electors at any general or regular municipal election that may be held not less than thirty, and not more than thirty-five, days from the date of the filing of the petition; and if no general

election or regular municipal election is to be held within the stated periods, then the governing body of the municipality shall order the holding of a special election for the purpose of submitting to the electors the question whether the aforesaid resolution shall remain in effect and its adoption be ratified, and such resolution shall not have force or effect unless a majority of the electors voting on such question shall be in favor thereof."

Did the legislature intend to provide a special and exclusive way to discontinue such proceeding? It is our' conclusion that such was the legislative intent. Sec. 197.04, Stats., obviously gives to a municipal council the power to pass a resolution discontinuing all proceedings after the commission has determined the just compensation to be paid. But this power is in the nature of a veto which subsequently may be overruled by the electors. It was no doubt deemed wise to give that power to the council to the end that, if in its judgment the just compensation was too high, or if conditions had so changed as to render acquisition of the utility by the city of doubtful benefit to the public, or if unfavorable conditions existed which would interfere with or prevent an advantageous sale of the bonds, or if some other reason existed for such action, then the council might pass a resolution discontinuing the proceedings at any time within ninety days after the final determination of compensation by the commission, which action by the council could be overridden by the electors at a referendum election to be initiated by a petition duly presented. It is very obvious that the legislature intended to grant to a city council the power to consider and to express its considerate judgment as, to the advisability of proceeding with the acquisition, after just compensation has been determined. Sec. 197.04 permits the council to act within ninety days after the final determination of just compensation by the commission. In case the council adopts a resolution dis-

continuing all proceedings, then the electors are afforded a period of ninety days thereafter in which to consider the action of the council and to initiate by petition a referendum election by which the action of the council in discontinuing the proceedings may be overridden. The statute in our opinion provides the only manner in which such proceedings may be discontinued after they have been regularly conducted up to the time that the public service commission has determined the just compensation. It was in substance and effect so held in *Milton v. McGowan Water, L. & P. Co.* 176 Wis. 658, 661, 187 N. W. 661, in considering an earlier statute relating to an attempted discontinuance of proceedings to acquire a public utility. It was there said:

"While it is true that, in the absence of any statutory provision showing a legislative intent to the contrary, a proceeding like this may be discontinued at any time before the right of the owners of the utility to compensation or damages has become absolute (20 C. J. 1077), the legislature, by the enactment of sec. 1797m—81a, Stats., *has definitely expressed an intent and has limited the right of the municipality to discontinue proceedings begun to acquire a public utility where the municipality has, prior to the enactment of the statute, determined to acquire the utility;* and sub. 3 of the statute must be construed in the light of the provisions of the balance of the statute. . . ."

"*There is sound reason both for limiting the power of discontinuance* and the institution of new proceedings for the acquirement of a utility. It is a matter of common knowledge that the acquiring of a utility by a municipality is connected with the expenditure of a great amount of labor and money, in procuring the proper survey, the appraisal, the hearings before the commission, and other proceedings incident thereto. . . ."

That case was decided in 1922 and, although the statute involved there has been amended, no language has been adopted by the legislature to indicate its disapproval of the

construction put upon the former section by this court, when it said :

"The legislature . . . has definitely expressed an intent and has limited the right of the municipality to discontinue proceedings begun to acquire a public utility, . . ."—

and when it further said :

"There is sound reason both for limiting the power of discontinuance and the institution of new proceedings for the acquirement of a utility."

The contentions of the plaintiffs, if sound, permit not less than fifteen per cent of the electors of a city, who at the initial referendum election had voted against acquiring the utility, to have another referendum and another opportunity to defeat the proposal of the city to acquire the utility. Such an intention cannot reasonably be spelled out of the language of ch. 197, Stats.

*By the Court.*—The order of the circuit court for La Fayette county is reversed, with directions to overrule the demurrer.