STATE EX REL. Dismas BECKER, Paul DeMarco, Douglas Drake, Virginia Link, Michael McGee, Anthony San Felipo, Nicholas Topping, and The Coalition to Oust Breier, Plaintiffs-Appellants,

v.

The COMMON COUNCIL OF the CITY OF MILWAUKEE, The City of Milwaukee, and Allen R. Calhoun, Jr., in his official capacity as City Clerk of the City of Milwaukee, Defendants-Respondents.†

Court of Appeals

*No. 80–1797. Submitted on briefs February 2, 1981.
—Decided March 19, 1981.*
(Also reported in 305 N.W.2d 178.)

† Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the brief of *Walter F. Kelly*, of Milwaukee, cooperating attorney, Wisconsin Civil Liberties Union Foundation.

For the defendants-respondents the cause was submitted on the brief of *James B. Brennan*, city attorney, and *Richard F. Maruszewski*, principal assistant city attorney.

Before Decker, C.J., Moser, P.J., and Cannon, J.

MOSER, P.J. The sole issue in this appeal is whether a "no-confidence" resolution seeking the removal from office of Milwaukee Police Chief, Harold Breier, constitutes "direct legislation" under sec. 9.20, Stats., requiring the Common Council of the City of Milwaukee (Common Council) to pass the resolution within thirty days of certification or submit it to the electorate in the next general election. We determine that because the resolution is not legislative in character, it is not the type of proposal contemplated by sec. 9.20, and the trial court was correct in quashing the writ of mandamus compelling the Common Council to submit the "no-confidence" resolution to the electorate.

The appellants in this case consist of certain individual Milwaukee residents who signed a petition in support of the "no-confidence" resolution, and an unincorporated association of Milwaukee citizens' groups who supported the resolution, referred to as The Coalition to Oust Breier.

The resolution in question provides as follows:

### "NO-CONFIDENCE" RESOLUTION

We, the undersigned qualified electors of the CITY of MILWAUKEE by our signatures request that the resolution set forth below, without alteration, either be adopted

by the Common Council or referred to a vote of the electors.

WHEREAS: the people of the city of Milwaukee have lost confidence in Harold Breier as Chief of Police,

BE IT RESOLVED: that the Common Council and Mayor of Milwaukee are instructed to request the resignation of Police Chief Harold Breier.

If Chief Breier does not resign, the Common Council and Mayor are instructed to follow all legal means to remove him from office.

The respondents are the City of Milwaukee, the Common Council (the city's legislative branch), and Allen R. Calhoun, Jr. (Calhoun) (the city clerk).

The relevant statute in this case is sec. 9.20, Stats., which provides:

Direct legislation. (1) A number of electors equal to at least 15% of the votes cast for governor at the last general election in their city may sign and file a petition with the city clerk requesting that an attached proposed ordinance or resolution, without alteration, either be adopted by the common council or referred to a vote of the electors. The person filing the petition shall designate in writing a person or organization to be notified of any insufficiency or improper form under sub. (3).

(2) The preparation and form of the direct legislation petition shall be governed by s. 8.15.

(2m) After the petition has been offered for filing, no name may be erased or removed. No signature may be considered valid or counted unless the date is less than 60 days before the date offered for filing.

(3) Within 15 days after the petition is filed, the city clerk shall determine by careful examination whether the petition is sufficient and whether the proposed ordinance or resolution is in proper form. He shall state his findings in a signed and dated certificate attached to the petition. If the petition is found to be insufficient or the proposed ordinance or resolution is not in proper form, the certificate shall give the particulars, stating

the insufficiency or improper form. The petition may be amended to correct any insufficiency or the proposed ordinance or resolution may be put in proper form within 10 days following the affixing of the original certificate and notification of the person designated under sub (1). When the original or amended petition is found to be sufficient and the original or amended ordinance or resolution is in proper form, the city clerk shall so state on the attached certificate and forward it to the common council immediately.

(4) The common council shall, without alteration, either pass the ordinance or resolution within 30 days following the date of the clerk's final certificate, or submit it to the electors at the next spring or general election, if the election is more than 6 weeks after the date the order is given. If 6 weeks or less before election the ordinance or resolution shall be voted on at the next election thereafter. The council by a three-fourths vote of the members-elect may order a special election for the purpose at any time prior to the next election, but not more than one special election for direct legislation shall be called in any 6-month period.

(5) Not more than 3 nor less than one week before the election, the city clerk shall cause the ordinance or resolution that is being submitted to a vote to be published once in a newspaper as are city ordinances.

(6) The ordinance or resolution need not be printed in its entirety on the ballot, but a concise statement of its nature shall be printed together with a question permitting the elector to indicate approval or disapproval of its adoption.

(7) If a majority vote in favor of adoption, the proposed ordinance or resolution shall take effect upon publication under sub. (5). Publication shall be made within 10 days after the election.

(8) City ordinances or resolutions adopted under this section shall not be subject to the veto power of the mayor and shall not be repealed or amended within 2 years of adoption except by a vote of the electors. The common council may submit a proposition to repeal or amend the ordinance or resolution at any election.

A petition containing the requisite number of signatures and the appended "no-confidence" resolution

were filed in the office of respondent Calhoun on August 14, 1980. On or about August 18, 1980, respondent Calhoun certified, pursuant to sec. 9.20(3), Stats., that the petition and appended resolution were in proper form, and forwarded them to the Common Council.

It is undisputed that the Common Council did not follow either of the procedures set forth in sec. 9.20(4), Stats: it did not act on the proposed resolution within thirty days of its certification, nor did it submit the proposed resolution for inclusion in the next spring or general election ballot. (The next election was to be held in November, 1980).

On September 22, 1980, the appellants filed a petition for writ of mandamus in the trial court alleging that in failing either to adopt the proposed resolution without alteration or refer it to a vote of the electorate in November, 1980, the Common Council had violated its duties under sec. 9.20, Stats; had failed to perform its ministerial duties; and, had violated the right of the appellants and the whole electorate of the City of Milwaukee to vote on the proposed "no-confidence" resolution. Appellants sought to have the court command the Common Council to submit the proposed resolution to the Milwaukee electorate in the November, 1980 election.

An alternative writ of mandamus was issued on September 22, 1980, in which the court commanded the respondents to either place the "no-confidence" resolution on the ballot or show cause before the court on September 25, 1980, why they had not done so. On September 25, 1980, respondents moved to quash the writ of mandamus. Briefs were filed. On September 29, 1980, the trial court rendered a memorandum decision in which it determined that the resolution was not "legislative" in nature, as that term has been defined by Wisconsin case law, and was not within the purview of sec. 9.20, Stats. Therefore, there was no legal basis for the writ of mandamus.

An order quashing the writ of mandamus was filed September 29, 1980. This appeal is from that order.[1]

The right of the electorate to directly legislate is not without its limitations.[2] In *Althouse v. City of Madison*[3] our supreme court explained that one limitation "[i]mplicit in the direct legislation statute, sec. 9.20, Stats., is the requirement that the ordinance or statute sought to be passed is legislative in character."[4] A proposal that is administrative, rather than legislative in character, is not the proper subject of initiative proceedings.[5]

The Wisconsin Supreme Court addressed the legislative-administrative distinction in *Heider v. City of Wauwatosa*,[6] quoting the following portion of McQuillin's treatise on municipal corporations:

In reference to what constitutes legislative and what administrative action in connection with restriction of the power of initiative or referendum to legislative matters it has been said that action relating to subjects of permanent and general character are usually regarded

[1] On September 30, 1980, appellants filed a motion to bypass this court pursuant to sec. 808.05, Stats. The Supreme Court denied the motion to bypass in an order dated October 3, 1980.

[2] *See* Note, *Limitations on Initiative and Referendum*, 3 Stan. L. Rev. 497 (1951).

[3] 79 Wis.2d 97, 255 N.W.2d 449 (1977).

[4] *Id.* at 107, 255 N.W.2d at 453.

[5] *Althouse, supra* note 3, at 107–08, 255 N.W.2d at 453–54.

Direct legislation takes two forms: initiative, which involves the direct consideration by the voters of new legislation, and referendum, which involves the voter review of already existing legislation, usually with a view toward repealing it. *Landt v. City of Wisconsin Dells*, 30 Wis.2d 470, 475, 141 N.W.2d 245, 247–48 (1966); 5 E. McQuillin, The Law of Municipal Corporations §16.52 and §16.53 (3d. ed., 1969 rev. vol.). Section 9.20, Stats., authorizes only the initiative type of direct legislation and there is no companion statute authorizing review by referendum in Wisconsin. *See Landt, supra* at 475–77, 141 N.W.2d at 248–49.

[6] 37 Wis.2d 466, 155 N.W.2d 17 (1967).

as legislative, and those providing for subjects of temporary and special character are regarded as administrative. . . . An ordinance which shows an intent to form a permanent rule of government until repealed is one of permanent operation within requirement that measure must be of permanent operation in order to be submitted to electors under initiative and referendum statute. Obviously, details which are essentially of a fluctuating sort, due to economic or other conditions, cannot be set up in and by an ordinance to be submitted to vote of the people under initiative and referendum statute, which restricts submission to people to measures of permanent operation.

The test of what is a legislative and what is an administrative proposition, with respect to the initiative or referendum, has further been said to be whether the proposition is one to make new law or to execute law already in existence. Again, it has been said: "The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it."[7]

Also quoting and applying this excerpt in its thorough and well-reasoned memorandum decision, the trial court in this case concluded:

The proposed resolution seeks to have the common council and mayor of the City of Milwaukee request the resignation of Police Chief Harold Breier and in the alternative to seek his removal from office by legal process. . . .

The resolution is designed to effect [sic] but one person and as such has a very special character. Cer-

---

[7] Id. at 475, 155 N.W.2d at 21–22, quoting 5 E. McQuillin, The Law of Municipal Corporations §16.55 (3d ed. 1952). (Subsequent to the Heider case, in 1969, a revised volume 5 of McQuillin's treatise was published. Although there were some changes in wording, §16.55 is substantially the same). See also Note, The Legislative/Administrative Dichotomy and the Use of the Initiative and Referendum in a North Dakota Home Rule City, 51 N.D. L. Rev. 855, 858–865 (1975); Note, Limitations on Initiative and Referendum, supra note 2, at 502–04.

tainly the removal of a particular individual from employment in government can hardly be classified as a permanent rule of government until repealed. This Court is confident that Chief Breier is mortal just as surely as the rest of us and that in due course his employment as the Chief of Police of the City of Milwaukee will be terminated by one means or another. The proposal is thus also temporary in character. . . .

McQuillin also states that something is legislative when it proposes new law and administrative when it executes a law already in existence. The key word here is the use of the word "law." Websters defines "law" as: "A rule or mode of conduct or action that is prescribed or formally recognized as binding by a supreme controlling authority or is made obligatory by a sanction (as an edict, decree, rescript, order, ordinance, statute, resolution, rule, judicial decision, or usage) . . ." This Court does not believe that the proposed resolution constitutes a "law" as that word is defined in Websters.

We agree with this analysis by the trial court and underscore its conclusion that the resolution in question is very specific and would have only a temporary effect. It does not attempt to set forth a general and permanent rule of conduct, or a new policy or plan.

The Kentucky case *City of Newport v. Gugel*[8] is instructive here. In that case an initiative ordinance was adopted by the taxpayers which fixed minimum salaries for police and fire department personnel, regulated working hours, vacations, days without pay and filling of different positions. The Kentucky Court of Appeals determined that these matters were administrative in character and inappropriate for initiative legislation. The court applied the general rule that initiative provisions are applicable only to acts which are legislative, not administrative in character, explaining:

Personnel administration is primarily an administrative matter, at least as far as concerns the details of man-

---

[8] 342 S.W.2d 517 (Ky. 1960).

agement. To permit the electorate to initiate piece-meal measures affecting the fiscal affairs of the city without regard for the overall fiscal program, or measures not embodying a basic plan or policy for the entire area of government activity upon which the measure touches, could result in destruction of the efficient administration of the affairs of the city, and we do not believe the initiative statute so intends.[9]

As the trial court pointed out, the exclusive authority over the hiring, removal and disciplining of police and fire department personnel is vested in the Board of Fire and Police Commissioners (the Board) by sec. 62.50, Stats. Subsection (1m)[10] of that statute authorizes and commands the Board to conduct an annual review of "all aspects of the operations of the police and fire departments of the city," including procedures relating to the conduct of employees of the police and fire department. The Board is also vested with exclusive control over appointments,[11] (including appointment of chiefs),[12] suspension and removal.[13]

[9] *Id.* at 520. *See also Conine v. Hunter,* 97 Conn. 579, 117 A. 548, 549 (1922) (wherein the court stated that appointment and removal of the town manager is not a proper subject for initiative and referendum) ; *Transit Union–Div. 757 v. Yerkovich,* 24 Or. App. 221, 545 P.2d 1401, 1404–05 (1976) (initiative petition seeking enactment of a city ordinance approving construction of proposed freeway dealt with an administrative matter).

[10] Sec. 62.50(1m), Stats:

POLICY REVIEW. The board shall conduct at least once each year a policy review of all aspects of the operations of the police and fire departments of the city. The board shall consider but not limit its review to procedures relating to discipline, promotion, work rules and any other procedure relating to the conduct of employes of the police and fire department.

[11] Sec. 62.50(2), Stats:

CONTROL OF APPOINTMENTS. No person may be appointed to any position either on the police force or in the fire department of the city, except with the approval of the board.

The "no-confidence" resolution involved in this case is an attempt to usurp the administrative function of the Board and cannot be permitted. This conclusion is in accord with *Heider*[14] in which the Wisconsin Supreme Court determined that a proposed resolution designed to

[12] Sec. 62.50(6), Stats:

APPOINTMENT OF CHIEFS. If a vacancy exists in the office of chief of police or in the office of chief engineer of the fire department, the board by a majority vote shall appoint proper persons to fill such offices respectively, subject to suspension and removal as provided in this section. When filling a vacancy in the office of chief of police or in the office of chief engineer of the fire department occurring after June 15, 1977, the board shall appoint the person to a term of office the number of years and commencement date of which shall be set by the city of the 1st class by ordinance and which may not exceed 10 years, or for the remainder of an unexpired term.

[13] Sec. 62.50(11), Stats:

DISCHARGE OR SUSPENSION. No member of the police force or fire department may be discharged or suspended for a term exceeding 30 days by the chief of either of the departments except for cause and after trial under this section.

Sec. 62.50(19), Stats:

CHARGES BY AGGRIEVED PERSON. In cases where duly verified charges are filed by any aggrieved person with the board of fire and police commissioners, setting forth sufficient cause for the removal of any member of either of the departments, including the chiefs or their assistants, the board or chief may suspend such member or officer pending disposition of such charges. The board shall cause notice of the filing of the charges with a copy to be served upon the accused and shall set a date for the trial and investigation of the charges, following the procedure under this section. The board shall decide by a majority vote whether the charges are sustained. If sustained, the board shall immediately determine whether the good of the service requires that the accused be removed, suspended from office without pay for a period not exceeding 60 days or reduced in rank. If the charges are not sustained, the accused shall be immediately reinstated without prejudice. The secretary of the board shall make the decision public.

[14] Note 6, *supra*.

prohibit the Common Council from approving expenditures for an addition to Wauwatosa East High School for three years and to prohibit the Common Council from appropriating any funds for such an addition until a master plan was prepared and adopted by the Common Council was not legislative in character. The court explained that the authority to adopt a master plan had been vested by statute in the City Plan Commission, saying "[t]his court has held that where a statute has conferred a procedure upon a body, electors may not demand the submission of a question which would modify the statutory authority."[15]

The trial court in this case stated:

> Counsel for the petitioners points out that the resolution calls for the resignation of Chief Breier and in the alternative the use of legal process to seek his removal but does not call for his outright removal. This counsel contends avoids any interference with the authority vested in the Fire and Police Commission. The Court considers this to be a meritorious argument if the Court were considering the legality of the council adopting such a resolution. However, the question that the Court is presently considering is not one of the legality of the council adopting such a resolution but rather whether or not such a resolution would be legislative in nature. The legislature has determined the subject matter of the tenure of Chief of Police to be administrative in character.

We agree with, and adopt, this analysis.

The trial court's memorandum decision in this case was thorough, legally sound and well-expressed. The trial court's order quashing the writ of mandamus was proper, and we affirm.

*By the Court.*—Order affirmed.

---

[15] *Id.* at 477, 155 N.W.2d at 23. [Citations omitted.]