MOUNT HOREB COMMUNITY ALERT, Judy Patenaude, Laura Wenman, Audrey Yapp and Wayne Yapp, Plaintiffs-Appellants,

v.

VILLAGE BOARD OF MT. HOREB, Defendant-Respondent-Petitioner.

Supreme Court

No. 01–2217. *Oral argument November 6, 2002.—Decided July 8, 2003.*

2003 WI 100

(Also reported in 665 N.W.2d 229.)

545

For the defendant-respondent-petitioner there were briefs by *Richard C. Yde, Angela A. James,* and *Stafford Rosenbaum LLP,* Madison, and oral argument by *Richard C. Yde.*

For plaintiffs-appellants there was a brief by *Christopher J. Blythe* and *Lawton & Cates, S.C.,* Madison, and oral argument by *Christopher J. Blythe.*

An amicus curiae brief was filed by *Daniel M. Olson,* Madison, on behalf of the League of Wisconsin Municipalities.

¶ 1. DIANE S. SYKES, J. This is a mandamus action to compel a village board to act on an initiative petition pursuant to the direct legislation statute, Wis. Stat. § 9.20 (1999–2000).[1]

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 2. The direct legislation statute permits local electors to submit a petition requesting that an attached proposed ordinance either be adopted by the municipality's governing body without alteration or be referred to a vote in the next election. *See* Wis. Stat. § 9.20(1), (4). The proposed ordinance at issue here, initiated by a group of Mount Horeb citizens, would require the Village of Mount Horeb to hold a binding referendum prior to the start of construction on any new village building project requiring a capital expenditure of $1 million or more.

¶ 3. Upon presentation and clerical certification of the direct legislation petition, the Mount Horeb Village Board neither adopted the proposed ordinance nor referred it for a vote. The citizens' group sought a writ of mandamus to compel action on the petition under Wis. Stat. § 9.20. The circuit court denied the writ, concluding that the proposed ordinance was not a proper subject of direct legislation. The court of appeals reversed.

¶ 4. Direct legislation in cities and villages pursuant to Wis. Stat. § 9.20 is qualified only by four narrow limitations which this court has declared are implicit in the statute. Direct legislation under Wis. Stat. § 9.20 must be legislative in nature, cannot repeal an existing ordinance, cannot exceed the powers of the municipal governing body itself, and cannot modify statutorily prescribed procedures. Because the proposed ordinance at issue here is legislative in nature, does not repeal any existing ordinance, falls within the powers of the village board, and does not modify statutory procedures, it is fully consistent with the direct legislation statute, and the Village Board was therefore required to act upon it

549

under Wis. Stat. § 9.20(4). We affirm the court of appeals and remand for issuance of the writ of mandamus.

## I. FACTS & PROCEDURAL HISTORY

¶ 5. On December 11, 2000, a group of Mount Horeb citizens, Judy Patenaude, Laura Wenman, and Audrey and Wayne Yapp, on behalf of a citizens' organization known as Mount Horeb Community Alert ("Community Alert"), filed a petition for direct legislation with the Mount Horeb village clerk pursuant to Wis. Stat. § 9.20. Community Alert's petition sought adoption of a proposed ordinance that would require any construction project costing $1 million or more to be submitted to a binding referendum. The proposed ordinance is as follows:

> Prior to the start of any physical construction of any municipally financed (in whole or in part) project requiring a Village capital expenditure of $1 million or more, the Village Board shall submit to the electorate a binding referendum for approval of the project. Failure of the binding referendum shall preclude the Village from proceeding with the project. The wording of any referendum shall provide the specific purpose, location and cost of the project. Nothing in this provision shall be construed to preclude the Village from exercising its role in the planning or design of such publicly financed projects.

> This ordinance shall be in full force and effect upon passage and publication as provided by law.

¶ 6. After correcting some technical errors in the form of the petition, the village clerk certified and forwarded the petition to the Village Board. The Village Board took up the matter on January 16, 2001, and

determined that the proposed ordinance was not an appropriate subject for direct legislation. Accordingly, the Village Board neither adopted the proposed ordinance nor placed it on the ballot in the spring election.

¶ 7. Rebuffed by the Village Board, Community Alert petitioned the Dane County Circuit Court for a writ of mandamus to compel action on the direct legislation petition. The circuit court, the Honorable Richard J. Calloway, denied the writ, concluding that the proposed ordinance would impermissibly modify the statutorily prescribed procedures for borrowing funds for municipal expenditures. Community Alert appealed, and the court of appeals reversed. *Mount Horeb Community Alert v. Village Board of Mount Horeb,* 2002 WI App 80, ¶ 26, 252 Wis. 2d 713, 643 N.W.2d 186.

¶ 8. The court of appeals rejected the Village Board's claims that the proposed ordinance would modify statutory borrowing procedures. *Id.,* ¶¶ 10–16. The court also concluded that Community Alert's proposal was legislative in nature, did not repeal any existing ordinance, and did not exceed the village's municipal powers. *Id.,* ¶¶ 17–22. Accordingly, the court of appeals concluded that the proposed ordinance was a proper subject of direct legislation under Wis. Stat. § 9.20, and remanded for issuance of the writ of mandamus. *Id.,* ¶ 26. We accepted the Village Board's petition for review, and now affirm.

## II. STANDARD OF REVIEW

¶ 9. Mandamus is an extraordinary writ issued in the discretion of the circuit court to compel compliance with a plain legal duty. *State ex. rel. Althouse v. City of*

*Madison,* 79 Wis. 2d 97, 105–06, 255 N.W.2d 449 (1977). A writ of mandamus is equitable in nature and will issue when the plaintiff demonstrates: 1) a clear legal right to relief; 2) a positive and plain legal duty on the part of the official or body to whom the writ is directed; 3) substantial damage due to the nonperformance of the duty; and 4) no adequate remedy at law. *Law Enforcement Standards Bd. v. Lyndon Station,* 101 Wis. 2d 472, 493, 305 N.W.2d 89 (1981). Mandamus is the proper means to challenge a municipality's failure to comply with the requirements of the direct legislation statute, Wis. Stat. § 9.20. *Althouse,* 79 Wis. 2d at 102; *Thompson v. Village of Whitefish Bay,* 257 Wis. 151, 153–54, 42 N.W.2d 462 (1950).

■

¶ 10. Because the material facts are not in dispute, we are presented with a question of the proper application of Wis. Stat. § 9.20. This is a question of law that we review independently of the circuit court and court of appeals. *Althouse,* 79 Wis. 2d at 106–07; *Heitman v. City of Mauston Common Council,* 226 Wis. 2d 542, 546, 595 N.W.2d 450 (Ct. App. 1999); *Schaefer v. Potosi Village Bd.,* 177 Wis. 2d 287, 289, 501 N.W.2d 901 (Ct. App. 1993).

### III. ANALYSIS

¶ 11. We begin with James Madison's articulation of the justification for government, the necessity of limitations on governmental power, and the superiority of the republican form of government as a check against faction and the potential excesses of the majority:

> But what is government itself but the greatest of all reflections on human nature? If men were angels, no government would be necessary. If angels were to

govern men, neither external nor internal controls on government would be necessary. In framing a government which is to be administered by men over men, the greatest difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself. A dependence on the people is, no doubt, the primary control on the government; but experience has taught mankind the necessity of auxiliary precautions.

*The Federalist,* No. 51 (James Madison).

¶ 12. Direct legislation is a potentially powerful limitation on governmental authority, a remedy available to the people when their representative government has become unresponsive or misrepresentative. As a form of pure democracy, however, it also stands in contradiction of the principles of republican government, which is designed to guard against the oppression of the minority by the majority.[2]

¶ 13. Direct legislation—procedures by which the voters themselves adopt legislation—comes in two forms, initiative and referendum.[3] Initiative involves the initiation and enactment of new legislation directly

---

[2] "The United States shall guarantee to every State in this Union a Republican Form of government . . . ." United States Const. art. IV, § 4.

[3] Theodore Roosevelt was a prominent proponent of the initiative and the referendum during the Progressive movement. In a speech to the Ohio Constitutional Convention, Roosevelt explained his position: "I believe in the initiative and the referendum, which should be used not to destroy representative government, but to correct it when ever it becomes misrepresentative." Theodore Roosevelt, Address Before the Ohio Constitutional Convention, Columbus, Ohio (February 12, 1912).

by the electorate; referendum involves direct review by the electorate of legislation which the governing body has adopted or provisionally adopted pending voter approval. *Landt v. City of Wisconsin Dells,* 30 Wis. 2d 470, 475, 141 N.W.2d 245 (1966); *Heitman,* 226 Wis. 2d at 546–47.

¶ 14. Since 1911, Wisconsin has had a statutory form of direct democracy at the local level.[4] *See* Wis. Stat. § 9.20, the direct legislation statute; ch. 513, Laws of 1911.[5] The direct legislation statute provides an initiative procedure by which citizens of a city or village may compel their common council or village board to pass a proposed ordinance directly or put the proposed ordinance before the local electors for a popular vote.

---

[4] In his speech to the Ohio Constitutional Convention, Theodore Roosevelt commended the Wisconsin method of direct democracy to the convention delegates. *See supra,* Roosevelt, ¶ 13 n.3.

[5] The source of the present direct legislation statute was ch. 513, Laws of 1911, creating "sections 39 i to 39 l, inclusive, of the statutes, relating to the initiative and referendum on acts of municipal councils and of boards of county supervisors." Section 39 i "created an initiative procedure, the filing of a petition to compel a city council or county board to adopt an ordinance, or, in default of such adoption, to submit it to popular vote. Sec. 39 j created a procedure of the referendum type, the filing of a petition to compel a city council or county board either to repeal an ordinance or resolution already adopted, or, in default of such repeal, to submit it to popular vote." *Landt v. City of Wisconsin Dells,* 30 Wis. 2d 470, 475–76, 141 N.W.2d 245 (1966). Section 39 j was later repealed and has not since been reenacted. *See* § 27, ch. 383, Laws of 1915. The remaining sections were revised and renumbered to Wis. Stat. § 10.43. *See* § 14, ch. 385, Laws of 1915. Wisconsin Statute § 10.43 eventually became Wis. Stat. § 9.20. *See* § 1, ch. 666, Laws of 1965.

██

¶ 15. Direct local legislation by initiative "is a creature of statute and its use must comport with the requirements established by the legislature." *Heitman,* 226 Wis. 2d at 547 (citing *Landt,* 30 Wis. 2d at 478–79). A petition for direct legislation must be signed by "[a] number of electors equal to at least 15% of the votes cast for governor at the last general election in their city or village."[6] Wis. Stat. § 9.20(1). Upon certification as to sufficiency and form by the city or village clerk, "[t]he common council or village board shall, without alteration, either pass the ordinance or resolution within 30 days following the date of the clerk's final certificate, or submit it to the electors at the next spring or general election." Wis. Stat. § 9.20(4). If adopted by the council or board or by the voters in the election, the ordinance cannot be vetoed, nor can it be repealed or amended for a period of two years, except by a vote of the electors. Wis. Stat. § 9.20.

██

¶ 16. We have previously held that the procedure for direct local legislation established in Wis. Stat. § 9.20 "implements the legislative powers that have been reserved to the people" by their elected representatives in the legislature. *Althouse,* 79 Wis. 2d at 118–19. As such, the statute cannot be interpreted so as to unduly restrict those reserved local legislative powers, which "are exercised with particular appropriateness under circumstances where the people are of the opinion that their elected representatives are not acting in response to the public will." *Id.* at 119.

---

[6] "Every United States citizen age 18 or older who is a resident of an election district in this state is a qualified elector of that district." Wis. Const. art. III, § 1.

¶ 17. Direct legislation initiated pursuant to Wis. Stat. § 9.20 is subject to four limitations that we have held are implicit in the statute. *See Althouse,* 79 Wis. 2d at 105. An ordinance initiated under Wis. Stat. § 9.20: 1) must be legislative as opposed to administrative or executive in nature; 2) cannot repeal an existing ordinance; 3) may not exceed the legislative powers conferred upon the governing municipal body; and 4) may not modify statutorily prescribed procedures or standards. *Heitman,* 226 Wis. 2d at 548–49 (citing *Althouse,* 79 Wis. 2d at 107–08).

¶ 18. These limitations preserve municipal control over executive and administrative functions and protect the integrity of the statutory framework governing municipalities, while at the same time permit the proper invocation by electors of the direct legislation procedure provided by the statute. The limitations, implicit in the statute itself, are narrowly construed and carefully applied so as to avoid judicial dilution of the statutory initiative right. *See Althouse,* 79 Wis. 2d at 118–19. If the statutory requirements for a direct legislation petition have been met, and none of the limitations applies, the statute provides that "[t]he common council or village board *shall,* without alteration, either pass the ordinance or resolution within 30 days . . . or submit it to the electors at the next spring or general election." Wis. Stat. § 9.20(4) (emphasis added); *Althouse,* 79 Wis. 2d at 118.

¶ 19. The first of these limitations pertains to the basic nature of the ordinance that is the subject of the initiative. "Implicit in the direct legislation . . . statute is the requirement that the ordinance or statute sought

to be passed is legislative in character." *Id.* at 107. A proposed ordinance that is administrative or executive rather than legislative in character is not a proper subject of initiative procedure. *Id.* at 107–08.

¶ 20. For example, in *Heider v. Common Council of City of Wauwatosa,* 37 Wis. 2d 466, 477–78, 155 N.W.2d 17 (1967), voters in the City of Wauwatosa had authorized the city to issue bonds in an amount not to exceed $7.5 million to acquire school sites and to erect and improve school buildings, including a high school. *Id.* at 470. A subsequent proposal for direct legislation sought to restrict the common council's approval of capital expenditures for an addition to the high school until a master plan for the buildings and grounds had been prepared under the direction of a city planning commission, with the guidance of a non-resident professional city planner. *Id.* at 469–470.

¶ 21. Because the subject of the initiative in *Heider* was not affirmative legislation upon a new subject, but instead sought to impose conditions on the previously enacted bonding authority for construction of the high school, we held that it was not a proper subject of direct legislation. *Id.* at 475–76. We used the following standard to distinguish between legislative and administrative or executive matters:

> The test of what is a legislative and what is an administrative proposition, with respect to the initiative or referendum, has further been said to be whether the proposition is one to make new law or to execute law already in existence. Again, it has been said: "The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it."

*Id.* at 475 (quoting 5 E. McQuillin, *The Law of Municipal Corporations* § 16.55 (3rd ed.)).

¶ 22. We also noted in *Heider* that "action relating to subjects of permanent and general character are usually regarded as legislative, and those providing for subjects of temporary and special character are regarded as administrative." *Id.* Relying on these principles, we held in *Heider* that the proposed direct legislation was administrative rather than legislative in nature, because it was "clearly a prescription of a procedure to be followed in execution of the ordinance [already] passed. It does not prescribe a 'new policy or plan' but 'merely pursues a plan already adopted.' " *Id.* at 475–76.[7]

¶ 23. In *State ex rel. Becker v. Common Council of City of Milwaukee,* 101 Wis. 2d 680, 305 N.W.2d 178 (Ct. App. 1981), the court of appeals relied upon *Heider* in concluding that a proposal for direct legislation which sought to remove the Milwaukee police chief was administrative rather than legislative in character. Because the proposal was specific in application to the current chief, would have only a temporary effect, did not set forth a general and permanent rule of conduct, and did not create a new policy or a new plan, the court of appeals concluded that the proposed direct legisla-

---

[7] We also held that the resolution would have modified the statutory authority granted to the city planning commission, an administrative body that was charged with carrying the initial proposal into effect, and for this additional reason was not a proper subject for direct legislation. *See Heider v. Common Council of City of Wauwatosa,* 37 Wis. 2d 466, 477–78, 155 N.W.2d 17 (1967).

tion to remove the chief was administrative in character, and therefore not a proper subject of direct legislation. *Id.* at 687.[8]

¶ 24. Some years after *Heider,* in *Althouse,* we determined that a proposed ordinance which sought to impose rent controls was a legislative rather than administrative measure, because the common council could have enacted the ordinance as an original matter. *Althouse,* 79 Wis. 2d at 102, 118. We held that the direct legislation statute could be used "to compel a common council to enact or to place on the ballot any proposed ordinance which the common council in its legislative capacity could enact." *Id.* at 118. Although the common council had refused to enact or place the rent control initiative on the ballot because of concerns about its constitutionality, we held that:

> [U]nder the peremptory statutory provisions of sec. 9.20, Stats., the common council has no authority whatsoever, in respect to direct legislation, to make an initial judgment of the constitutionality or validity of the proposed legislation. . . . In general, of course, where a city council itself initiates an ordinance, it may refuse to adopt it because of its doubtful constitutionality. That is quite different, however, from the situation where its duties are peremptorily mandated by the direct legislation statute.

---

[8] The court of appeals also concluded that the proposal would "usurp" the "exclusive authority over the hiring, removal and disciplining of police and fire department personnel []" vested in the Board of Fire and Police Commissioners." *State ex rel. Becker v. Common Council of City of Milwaukee,* 101 Wis. 2d 680, 688–89, 305 N.W.2d 178 (Ct. App. 1981).

*Id.* at 110.[9]

¶ 25. While the initiative process of Wis. Stat. § 9.20 can be used to compel the adoption or popular vote on any local matter legislative in character, it cannot be used to directly or indirectly repeal an existing ordinance. This second limitation on direct legislation was implicated in *Landt,* 30 Wis. 2d at 473. There, the proposed ordinance would have prohibited the fluoridation of the public water supply, after the common council had adopted an increase in the water supply's fluoride content. *Id.* Because the proposed fluoridation prohibition was solely an attempt to repeal an existing ordinance, we affirmed the circuit court's judgment quashing the petition for a writ of mandamus. *Id.* at 473–74.

¶ 26. The third limitation on direct legislation stipulates that a proposed ordinance may not exceed the legislative powers of the local governing body itself. *Heitman,* 226 Wis. 2d at 549. Electors cannot do through direct legislation what the municipal governing body cannot do in its own right. That is, direct

---

[9] We emphasized in *Althouse* that the although "the intervention of the common council at this juncture of the direct legislation process . . . flies in the face of the mandatory provisions of sec. 9.20, Stats. [and] also would almost totally vitiate the policy behind the direct legislation statute[]," mandamus to compel compliance with Wis. Stat. § 9.20 would be improper if the measure's unconstitutionality is "clear" from prior adjudications on the same subject matter, if the measure is "beyond the pale of the authority of the council itself," or if the measure seeks to repeal an existing ordinance. *State ex rel. Althouse v. City of Madison,* 79 Wis. 2d 97, 110, 118, 255 N.W.2d 449 (1977).

legislation cannot exceed or enlarge the powers conferred upon the municipal governing body by state law.

¶ 27. In *Heitman,* the court of appeals concluded that a proposed ordinance restricting the location of a treatment facility for sexually violent persons was essentially a zoning measure, required by state law to be submitted to the local planning commission. *Id.* at 550–52. As such, the court of appeals concluded that the proponent of the proposed ordinance in the direct legislation petition was "attempting to do by initiative what the Common Council, itself, cannot do; *i.e.,* avoid the substantive and procedural safeguards" of state law regarding zoning. *Id.* at 554. Accordingly, the court of appeals concluded that "[b]ecause initiatives may be used for only those legislative acts which a municipality, itself, could do, Heitman's proposal is not one that can be accomplished by initiative." *Id.*

¶ 28. Finally, and as a corollary to the third limitation, a proposed ordinance under Wis. Stat. § 9.20 may not modify statutorily-prescribed procedures or standards that would bind the common council or village board if it attempted to legislate in the same area. *Flottum v. City of Cumberland,* 234 Wis. 654, 291 N.W. 777 (1940); *Henderson v. Hoesley,* 225 Wis. 596, 275 N.W. 443 (1937). Electors may not initiate legislation under the direct legislation statute if the proposed legislation would modify or conflict with statutorily-prescribed procedures that are binding on the municipality itself. *Althouse,* 79 Wis. 2d at 108; *Heider,* 37 Wis. 2d at 476–77.

¶ 29. In *Flottum,* the City of Cumberland was embarked upon a project to upgrade its electric generating plant, and was required to submit the financing of the project to a referendum in accordance with certain

statutory procedures. *Flottum,* 234 Wis. at 666–67. A direct legislation petition sought a separate, conflicting referendum on the project. This court concluded that "[w]hat the electors demanded was submission of a question which would have modified a statutory provision." *Id.* We held that because the legislature had "prescribed the referendum which shall be submitted in [power plant] acquisition proceedings, it seems clear that the common council would have no authority to modify the express provisions of the statute and adopt a different procedure." *Id.; see also Henderson,* 225 Wis. at 603–04 (proposed ordinance was an improper subject of direct legislation because it would have modified the "complete procedure" and "special and exclusive means" established by the legislature for acquisition of electric utility plant).

¶ 30. Similarly, in *State ex rel. Becker,* 101 Wis. 2d at 687 n.6, the court of appeals held that the initiative for the removal of the Milwaukee police chief was an improper subject of direct legislation because it conflicted with the state statute that vests "the exclusive authority over the hiring, removal and disciplining of police and fire department personnel . . . in the Board of Fire and Police Commissioners." *Id.* at 688.

¶ 31. Applying these principles here, we agree with the court of appeals that Community Alert's proposed ordinance is a proper subject of direct legislation under Wis. Stat. § 9.20. The proposed ordinance would require future capital projects costing $1 million or more to be submitted to a binding referendum. As such, the proposed ordinance is general in application (it applies to all new million dollar construction projects), sets forth a permanent rule until repealed, and creates new policy. It does not condition or direct the execution

of existing law, but, rather, makes new law. *See Heider,* 37 Wis. 2d at 475; *State ex rel. Becker,* 101 Wis. 2d at 685–86. Accordingly, the proposed ordinance is legislative rather than administrative in nature.

¶ 32. A village board is statutorily responsible for "the management and control of the village . . . finances" and may "carry its powers into effect by . . . appropriation." Wis. Stat. § 61.34(1). The Village Board contends that the proposed ordinance is not "fully legislative" because many administrative decisions enter into municipal construction projects. The proposed ordinance, however, does not restrict administrative decisionmaking in connection with municipal construction projects; rather, it requires a referendum prior to the commencement of municipally-financed construction projects expected to cost $1 million or more. The appropriation of funds for municipal construction projects is a central legislative function.

¶ 33. The proposed ordinance carefully specifies that it does not restrict the village's administrative decisionmaking regarding planning and design of construction projects: "[n]othing in this provision shall be construed to preclude the Village from exercising its role in the planning or design of such publicly financed projects." The Village Board's contention that the proposed ordinance is more administrative than legislative is unpersuasive. The decision to build a new million-dollar project is clearly a legislative one.

¶ 34. The Village Board does not identify any existing ordinances that would be repealed by the proposed ordinance; the second limitation on direct legislation, therefore, is not implicated here. The Village Board does argue, however, that the proposed ordinance exceeds the authority of the Board itself. This argument is based upon the hypothetical application of

the proposed ordinance to a library construction project, which, under Wis. Stat. § 43.58(1), is subject to the independent control of a separate library board.

¶ 35. This argument is misplaced. Local library boards have "exclusive control of the expenditure of all moneys collected, donated or appropriated for the library fund, and of the purchase of a site and the erection of a library building whenever authorized." Wis. Stat. § 43.58(1). The library board's exercise of control over the expenditure of library funds only comes into play after library funding is "appropriated" or "authorized." While the proposed ordinance implicates the initial municipal decision to appropriate funds for a library construction project of $1 million or more, it does not dictate the manner in which those funds are expended once appropriated or authorized. We are satisfied that the proposed ordinance does not exceed the powers conferred upon the Village Board.

¶ 36. Finally, the Village Board argues that the proposed ordinance would modify various statutory procedures that govern public contracting and financing of municipal construction projects. The Board contends that the proposed ordinance would conflict with the public bidding and contracting provisions of Wis. Stat. §§ 61.54, 61.55, 61.56 and 62.15,[10] insofar as those statutes authorize the Village Board to let contracts for public improvements pursuant to bidding, and provide an exception to the bidding requirement for emergencies when the public health and welfare are endangered. We agree with the court of appeals that the

---

[10] Wisconsin Statute § 62.15 is applicable to the Mount Horeb Village Board through Wis. Stat. § 61.56 and section 8.01 of the Mt. Horeb Village Code of Ordinances.

proposed ordinance does not modify or conflict with the Village Board's statutory authority to enter into construction contracts pursuant to public bidding or without public bidding in an emergency.

¶ 37. The Board contends that the referendum required by the proposed ordinance could not be held until after the bidding process is complete and contracts are entered into, because only then will the specific cost of the project be known. We share the court of appeals' skepticism of this argument: "[e]arly in the decision-making process, the cost of a project is a political issue for all municipalities. It is unrealistic to assume that the Village would have no idea whether a proposed project would cost $25,000, $750,000 or $1,250,000." *Mount Horeb Community Alert*, 252 Wis. 2d 713, ¶ 15. While there may indeed be some practical difficulties associated with accurately costing a construction project in advance of bidding, these are political or policy arguments better addressed to the electorate; these potential practical difficulties do not operate to preclude the initiative from ever reaching the ballot in the first place. We see no conflict between the proposed ordinance and the statutes relating to public bidding and contracting sufficient to preclude action on Community Alert's petition.

¶ 38. The Village Board also contends that the proposed ordinance conflicts with the statutory provisions governing municipal bonding under Wis. Stat. § 66.0621 and, generally, Chapter 67. The Board describes these statutes as setting forth "comprehensive procedures for accomplishing municipal borrowing," but does not identify how the proposed ordinance would modify or conflict with these comprehensive procedures. The proposed ordinance does not reference bonding or municipal borrowing. Even assuming that most

municipal construction projects that are expected to cost $1 million or more would be financed through bonding, the requirement of prior voter approval via a binding referendum does not interfere with the statutory procedures governing bond issues. The Village Board states that a referendum pursuant to the proposed ordinance "would be in addition to the referenda allowed in ch. 67," but concedes that there is nothing in Chapter 67 that "specifically prohibit[s] a referendum of the sort required by the proposed ordinance."

¶ 39. Accordingly, we conclude that Community Alert's proposed ordinance fully complies with Wis. Stat. § 9.20 and is therefore an appropriate subject of direct legislation under the statute. It is legislative rather than administrative in nature; it does not repeal any existing ordinance; it falls within the authority of the Village Board itself; and it does not modify or conflict with state statutes that would bind the Board if it tried to legislate in the same area. Because all of the requirements of Wis. Stat. § 9.20 have been met and none of the statute's implicit limitations applies, the Village Board was required to act on Community Alert's petition pursuant to Wis. Stat. § 9.20(4). Because the Village Board took no action on the petition, mandamus to compel compliance with Wis. Stat. § 9.20(4) is proper. *See Althouse,* 79 Wis. 2d at 102. We affirm the decision of the court of appeals which remands the cause to the circuit court for issuance of the writ of mandamus.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 40. N. PATRICK CROOKS, J. *(dissenting).* For the reasons set forth below, I must dissent.

¶ 41. The proposed ordinance here compromises the principles of representative government and

thereby raises constitutional concerns. Additionally, while the majority correctly notes that direct legislation initiated pursuant to Wis. Stat. § 9.20 is subject to four implicit limitations, I believe that this ordinance violates at least two of those limitations, in that it applies to administrative not solely legislative actions, and it attempts to modify statutorily prescribed procedures. As a result, the proposed ordinance conflicts with the direct legislation statute, since, in essence, it tries to replace the village board with the village electors as the decision maker. In doing so, it impairs powers delegated to the Mount Horeb Village Board by the legislature.

## Representative Government Principles/Constitutional Issues

### Analysis

¶ 42. I begin, like the majority, with recognition of the concept of our republican form of government, as provided for in the guarantee clause of section 4, Article IV of the United States Constitution.[1] As the majority itself recognizes, direct legislation is contrary to the principles of our representative system, in that it fails to protect against the possibility of tyranny by the majority.

> It is of great importance in a republic not only to guard the society against the oppression of its rulers, but to guard one part of the society against the injustice of the other part. Different interests necessarily exist in different classes of citizens. If a majority be united by a common interest, the rights of the minority will be insecure.

---

[1] "The United States shall guarantee to every state in this union a republican form of government . . . ." U.S. Const. art. IV, § 4.

*The Federalist,* No. 51 (James Madison)

¶ 43. The key word in the above quote is "republic". Our founding fathers chose a representative form of government over a direct democracy. In developing the republican form of government that exists today, a three-branch government was carefully crafted, to include separate powers and authority for each branch, so that there are checks and balances to protect against fear of tyranny by the majority.

¶ 44. Because our founding fathers rejected a direct democracy and instead adopted a representative democracy, direct legislation, in the form of initiative and referendum, is appropriately limited. In Wisconsin, direct legislation is a statutory right, rather than a constitutional right. *Meade v. Dane County,* 155 Wis. 632, 145 N.W. 239 (1914). As such, we have narrowly interpreted statutory provisions concerning direct legislation. *See Landt v. City of Wisconsin Dells,* 30 Wis. 2d 470, 478–79, 141 N.W.2d 245, 249–50 (1966).

¶ 45. The Wisconsin Constitution does not reserve to the people either a general right of initiative or referendum. Instead, the people of Wisconsin delegated all lawmaking powers to the legislature with the adoption of the state constitution. Wis. Const. Art. IV § 1.

Administrative Analysis

¶ 46. As noted previously, initiative involves legislative acts and cannot extend to administrative actions. *Heider v. Common Council of City of Wauwatosa,* 37 Wis. 2d 466, 474, 155 N.W.2d 17, 21 (1967). "Where [an ordinance] is administrative in character, it is outside the scope of initiative action and . . . it becomes a matter of judicial disposition to determine whether or not the actions of the electorate under [Section 9.20] are proper . . . ." *Id.* at 474.

568

¶ 47. The more a direct legislation proposal intrudes on city and village functions, the more likely that it will be held to be administrative in character. When a direct legislation proposal affects or controls governmental decisions, this court has looked to the nature of the governmental entity involved in the decision. In *Heider,* we held that a proposed resolution that would limit the actions of a plan commission was invalid, in that "city planning is an administrative function" performed by "the city plan commission—an administrative body." *Id.* at 476.

¶ 48. Here, the ordinance requires the Mount Horeb Village Board to identify in the wording of a capital expenditure referendum the "specific purpose, location and cost of the [capital improvement] project." Thus, the ordinance seeks to control more than just spending decisions. The location, and the purpose, of the proposed capital project are also at issue. Location decisions are generally functions controlled by an administrative body. For example, as noted in the amicus brief of the League of Wisconsin Municipalities, the location of a water tower is regulated by the Wisconsin Department of Natural Resources (DNR). Wis. Admin. Code § NR 811.57. Similarly, the location of public buildings and location of parks, streets, airports and other such items, is a shared function of a plan commission—an administrative body—with a city council or a village board. Wis. Stat. § 62.23(5). The provisions of Wis. Stat. § 62.23 are applicable to villages, such as the Village of Mount Horeb. Wis. Stat. § 61.35. Community Alert's proposed ordinance certainly seems more administrative than legislative in nature. The authority for direct legislation is not appli-

cable to administrative decisions. *See State ex rel. Althouse v. City of Madison,* 79 Wis. 2d 97, 255 N.W.2d 449 (1977).

Modification of Statutory Procedures

¶ 49. We disagree with the majority in regard to its conclusion that the proposed ordinance does not modify the statutory municipal borrowing procedures.

¶ 50. "(W)here a statute has conferred a procedure upon a [municipal] body, electors may not demand the submission of a question which [under the direct legislation statute] would modify the statutory authority." *Heider,* 37 Wis. 2d at 477 (citations omitted).

¶ 51. Based on the constitutionally delegated authority discussed previously, it seems clear that Wisconsin law does not favor a broad reading of the initiative power. In *Heitman v. City of Mauston,* 226 Wis. 2d 542, 595 N.W.2d 450 (1999), the court of appeals concluded that an ordinance proposal under Wis. Stat. § 9.20, which attempted to prohibit the City of Mauston from approving the building of a ch. 980 facility on city land, was in essence a zoning ordinance. The court of appeals held that the proposed prohibition was "pervasive," and was an attempt "to do by initiative what the Common Council itself, cannot do, *i.e.,* avoid the substantive and procedural safeguards" of the state zoning statutes. *Id.* at 554. The proposed ordinance was the type of ordinance electors cannot implement under Section 9.20. *Id.* at 553. Likewise, here, the Community Alert initiative conflicts with the municipal borrowing statutes, Wis. Stat. ch. 67, and with the procedures set forth in Wis. Stat. § 66.0621 relating to construction projects and the revenue obligations involved. *See Denning v. City of Green Bay,* 271 Wis. 230, 234–35, 72 N.W.2d 730,

732–33 (1955). The direct legislation proposal attempts to modify comprehensive procedures adopted by the legislature.

¶ 52. Here, the proposed ordinance would alter the legislatively created structure of village government, and undermine the statutory authority granted to the Mount Horeb Village Board. If adopted, the proposed ordinance would make the village electors, not the village board, the final decision maker, as to whether the village should proceed on any project involving a capital expenditure of one million dollars or more.

¶ 53. The legislature granted the village board authority to acquire property or manage village finances. It did not provide a general right for village electors to review the exercise of these powers by referendum, whether they involve a capital expenditure or not. Rather, the right of village electors to require a referendum, in response to an exercise of those powers, is limited to specific circumstances, such as bond issues. *See* Wis. Stat. § 67.05.

¶ 54. The majority correctly assumes that the ordinance would implicate municipal borrowing, because most projects which cost one million dollars or more require borrowing. Wisconsin Stat. ch. 67 provides a comprehensive scheme for municipalities desiring to borrow. Prior to a bond issue, the village board must pass a resolution authorizing borrowing. Wis. Stat. § 67.05(1). For the majority, if not all, of large capital projects (such as those involving libraries), a referendum must then be submitted to the electors for approval of the bond issue. Wis. Stat. § 67.05(5)(b).

¶ 55. Assuming that the proposed ordinance operates prior to the passage of the initial resolution authorizing borrowing, the village electorate first would

vote to approve the capital project. If the voters allowed the project to go forward, the village board could then pass a resolution authorizing borrowing. It must then resubmit the question of whether to permit the issuance of bonds. In effect, under the ordinance proposed here, the electorate must approve the proposed project twice, because without bonding, the project would more than likely fail. The resulting cumbersome procedure represents a modification of the statutory requirements for borrowing.

¶ 56. Wisconsin law does not appear to permit such a modification. In *Flottum v. City of Cumberland,* 234 Wis. 654, 666–67, 291 N.W. 777,782 (1940), this court held that a direct legislation petition, requesting a referendum on the municipal purchase of a power plant, improperly modified statutory procedures. We found that Section 66.06 (now 66.0621) provided the mechanism for this type of purchase. Section 66.06 granted the common council the authority to pass a resolution authorizing the purchase, and allowed the submission of the question for referendum. *Flottum,* 234 Wis. at 666. Thus, we held that the electorate could not request submission of the question by direct legislation under Section 10.43 (now 9.20), when a separate procedure was already in place. *See also Henderson v. Hoesley,* 225 Wis. 596, 601, 275 N.W. 443, 445 (1937) (holding direct legislation not appropriate where "the resolution, if it had been adopted . . . would in effect have provided that the proposed action . . . be again submitted to the voters of the city for their approval or disapproval").

¶ 57. It could be argued that this case is distinguishable, because the proposed ordinance could conceivably operate prior to the second referendum, whereas in *Flottum* and *Henderson* the ordinance

would have resulted in a second referendum. This distinction is not dispositive, however, because the cumulative effect is the same: multiple referenda, modifying statutory procedures.

¶ 58. The ordinance here directly affects the financing of capital projects, an area governed by Wis. Stat. ch. 67. Thus, for that reason, *Flottum* and *Henderson* appropriately control the outcome of this case.

¶ 59. Based on *Heider, Flottum, Henderson, Denning, Heitman,* and the strong commitment to a representative democracy present in Wisconsin law, the court of appeals' decision should be reversed.

¶ 60. Unfortunately, there are some who wish to disrupt the wheels of government solely for the purpose of disruption. The majority opinion provides them with a blueprint and an imprimatur. Although the majority certainly does not intend this result, the law of unintended consequences may well prevail.

¶ 61. For the reasons discussed, I respectfully dissent.

¶ 62. I am authorized to state that Justices WILLIAM A. BABLITCH and JON P. WILCOX join this dissent.